864 So.2d 803 (2003)
STATE of Louisiana
v.
Toney CONVERSE.
No. 03-KA-0711.
Court of Appeal of Louisiana, Fifth Circuit.
December 30, 2003.
*805 Paul D. Connick, Jr., District Attorney, Thomas J. Butler, Terry M. Boudreaux, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Kevin V. Boshea, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA and CLARENCE E. McMANUS.
SOL GOTHARD, Judge.
Defendant, Toney Converse, appeals his conviction and sentence on various drug violations. For reasons that follow, we affirm.
The record shows that on May 25, 2001, the Jefferson Parish District Attorney issued a five-count bill of information against defendant. In counts one, two, three, and four, the State charged defendant with distribution of cocaine in violation of La. R.S. 40:967(A). Count five charged distribution of cocaine within 1000 feet of a school in violation of La. R.S. 40:981.3. Defendant was arraigned on June 25, 2001, and pled not guilty to all charges.
On November 27, 2001, the State amended the bill of information, changing count four to a charge of possession with intent to distribute cocaine, and count five to distribution of cocaine. On that day, defendant was tried on all counts before a twelve-person jury. The jury returned a verdict of guilty as charged as to all counts.
On December 11, 2001, the trial court sentenced defendant to eighteen years at hard labor as to each of the five counts. The judge ordered that the sentences run concurrently with each other, and that the first five years be served without benefit of parole, probation or suspension of sentence. The court further stipulated that defendant would not receive credit for time served under home incarceration prior to trial. On the same day, the State filed a habitual offender bill of information, alleging defendant to be a second felony offender. The prosecutor informed the court that the State would seek enhancement of defendant's sentence on count one. Defendant *806 was advised of the State's allegations, and entered a denial.
On February 19, 2002, the trial court held a habitual offender hearing, after which the defendant was adjudicated a second felony offender. The trial judge vacated defendant's original sentence as to count one, and imposed a habitual offender sentence of eighteen years at hard labor, without benefit of probation or suspension of sentence.
Defendant filed a motion to reconsider sentence and a motion for appeal on February 19, 2002. On February 21, 2002, the trial court denied the motion to reconsider sentence, but granted the motion for appeal.

FACTS
Sergeant John Ladd, a narcotics officer with the Jefferson Parish Sheriff's Office, received an anonymous complaint from a drug hotline that indicated defendant, Toney Converse, was selling narcotics in an apartment complex at 261 Jules Avenue in Jefferson. Sergeant Ladd passed on the information to Lieutenant Raymond Gibbs, supervisor of the narcotics division.
On April 18, 2001, Lieutenant Gibbs instructed Agent Megan Carter, an undercover narcotics officer, to drive through the Jules Avenue complex and attempt to make contact with defendant. Agent Carter was accompanied by an officer trainee who was also working undercover. Surveillance officers were stationed in the area to monitor any transactions, and to ensure Agent Carter's safety. Agent Carter proceeded to Jules Avenue and asked a man she encountered there if he knew where she could get a "twenty," i.e., a rock of crack cocaine. The man responded that he knew of someone who might have one. The man left Agent Carter, and returned shortly thereafter to inform her that someone was going to get the crack she wanted.
Defendant approached Agent Carter's car window. He wore a Tulane University T-shirt. Agent Carter asked whether he was a Tulane student, and defendant answered affirmatively. Defendant gave Agent Carter twenty dollars worth of crack cocaine, and she gave him twenty dollars in currency. Defendant also gave Agent Carter a piece of paper bearing the initials T.C., and a pager number. Defendant told Agent Carter to use that number should she wish to purchase more cocaine. Agent Carter left the area, met with backup officers and turned over the narcotics evidence to them.
On April 20, 2001, Agent Carter called defendant's pager, using the number he had given her. Defendant responded to the page by telephoning her. She asked him whether he would sell her more cocaine. Defendant told her to meet him, and she proceeded to 261 Jules Avenue. When she arrived, Agent Carter paged defendant again. Defendant came out of the residence to meet her. Agent Carter purchased one hundred dollars worth of crack cocaine from him, and then left the area.
On May 2, 2001, Agent Carter contacted defendant to arrange a third transaction. She proceeded to 261 Jules Avenue, and defendant was waiting outside of the building. Agent Carter purchased two hundred dollars worth of crack cocaine from him.
On May 7, 2001, Agent Carter paged defendant, and he contacted her. She told him she wanted to buy more crack cocaine from him. Defendant instructed her to meet him at a Shell filling station on Jefferson Highway at Labarre Road. Defendant was waiting there when agent Carter arrived. Defendant sold her one hundred dollars worth of crack cocaine.
Agent Carter testified that her vehicle was outfitted with a hidden camera and audio equipment. The transactions, with *807 the exception of the third one, were captured on videotape. Agent Carter explained that defendant stood at the passenger side of her vehicle during that exchange, and he was out of the camera's range. There was, however, an audio recording of the third transaction. Video and audio tapes were played at trial for the jury.
On May 7, 2001, Agent Thomas Brison compiled a photographic lineup and presented it to Agent Carter. Agent Carter testified that she identified defendant as the man who had sold her crack cocaine. On May 10, Agent Carter contacted defendant for the last time, to direct him to a location where he would be arrested. Agent Carter arranged to meet defendant at the Shell filling station, where fellow officers assigned to the surveillance team waited there for defendant to arrive. Agent Carter gave them a description of defendant's vehicle.
Lieutenant Gibbs testified that he saw defendant drive into the Shell Station's parking lot. Defendant exited his car, and officers approached him. Defendant attempted to flee on foot, and was stopped and placed under arrest by Lieutenant Alfred McNally. Once defendant was handcuffed, Gibbs and Agent Brison secured and searched his vehicle. They discovered a Wendy's Restaurant cup in the car's console. It contained crack cocaine.
Charles Krone, an expert in the analysis and testing of controlled dangerous substances testified that he conducted a series of tests on samples of the white, rock-like material Agent Carter and other officers obtained from defendant. The tests were all positive for cocaine.

LAW
In brief to this court, defendant assigns three errors for our review. In the first he asserts he was denied effective assistance of counsel at both the trial and pre-trial proceedings. Defendant argues that his trial counsel was ineffective in several respects. Among other things, defendant complains that counsel was woefully deficient in his trial preparation. Defendant further argues that counsel failed to file pertinent post-trial motions. Defendant concedes that the issue would be better addressed in an application for post-conviction relief, and agrees that the record is insufficient for our review of the matter in this appeal. Defendant asks this court to remand the matter for an evidentiary hearing on this assignment of error before considering the appeal.
The State agrees that the record is insufficient for our review of this issue and that an evidentiary hearing in the district court is necessary. Alternatively, the State argues that defendant's argument has no merit, and should be dismissed.
A criminal defendant is guaranteed the effective assistance of counsel by the Sixth Amendment to the United States Constitution, and Article I, § 13 of the Louisiana Constitution. A claim of ineffective assistance of counsel must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the Strickland test, the defendant must show (1) that his attorney's performance was deficient, i.e., that the performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that counsel's errors or omissions resulted in prejudice so great as to undermine confidence in the outcome. It is not enough for the accused to make allegations of ineffectiveness; the accused must couple these allegations with a specific showing of prejudice. State v. Bell, 02-1127 (La.App. 5 Cir. 2/25/03), 840 So.2d 656, 660.
The Sixth Amendment does not guarantee "errorless" counsel, or counsel *808 judged ineffective by hindsight. Rather, a defendant is guaranteed an attorney who is reasonably likely to render effective assistance. State v. LaCaze, 99-0584 (La.1/25/02), 824 So.2d 1063, 1078, cert. den., 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed.2d 110 (2002). Judicial scrutiny must be highly deferential, and claims of ineffective assistance are to be assessed on the facts of the particular case as seen from the counsel's perspective at the time. The courts, therefore, must indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance. Id.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post-conviction relief filed in the trial court, where a full evidentiary hearing can be conducted. State v. McIntyre, 97-876 (La.App. 5 Cir. 1/27/98), 708 So.2d 1071 at 1075. While there is ample precedent for this court to consider the issue on appeal, we will do so only when the record before us contains sufficient evidence to decide the issue. State v. Peart, 621 So.2d 780, 787 (La.1993); State v. Bell, 02-1127 at 840 So.2d 656 at 660.
In the instant case, it appears that defendant would have this court hear the issue of ineffective assistance of counsel on appeal even when all parties agree that the record is insufficient to consider the matter. That would afford the defendant the evidentiary hearing needed, without the necessity of going through the procedural step of filing an application for post-conviction relief. We are not inclined to change the criteria for considering the matter of ineffective assistance on appeal. Accordingly, we will not remand for an evidentiary hearing before hearing the appeal in this matter. The correct avenue for defendant to seek review of this issue is by post-conviction relief.
The remaining two assignments of error alleged by defendant concern the sentence imposed. Defendant argues the sentence is excessive because the trial court failed to consider the factors enumerated in La.C.Cr.P. article 894.1, and because of defendant's age, background, and lack of criminal history.
By these assignments, defendant argues that his eighteen-year sentence as a second felony offender is excessive, because the trial court failed to properly employ the provisions of La.C.Cr.P. art. 894.1. He further complains that the trial court failed to consider imposing a sentence below the statutory minimum. Defendant filed a timely motion to reconsider sentence following the habitual offender sentencing, and the motion was denied. Defendant failed to state in his motion specific grounds on which it was based as required by La.C.Cr.P. art 881.1 A(2). The failure to file a motion to reconsider sentence, or to state the specific grounds on which the motion is based, limits a defendant to a review of the sentence only for constitutional excessiveness. State v. Dupre, 03-256 (La.App. 5 Cir. 5/28/03), 848 So.2d 149, 153.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La. 1992); State v. Munoz, 575 So.2d 848, 851 (La.App. 5 Cir.1991), writ denied, 577 So.2d 1009 (La.1991).
La. R.S. 15:529.1(A)(1)(a) provides that a defendant, who is adjudicated a second felony offender under the Louisiana Controlled Dangerous Substance Law, shall be given a sentence not less than one-half the *809 longest term and not more than twice the longest term prescribed for a first conviction in convictions punishable by imprisonment for any term less than life. La. R.S. 40:967(B)(4)(b), as it provided at the time of commission of the crime, gave a sentence range of five to thirty years. Thus, under the sentencing provisions in effect at the time of defendant's offenses, defendant was subject to an enhanced term of fifteen to sixty years.
Effective June 15, 2001, shortly after defendant committed the underlying offenses, 2001 La. Acts, No. 403 lowered the mandatory minimum sentence for distribution of cocaine from five to two years. However, because the maximum sentence of thirty years was not changed, the mandatory minimum sentence for a second offender under the cocaine distribution statute remains fifteen years. Defendant suggests the trial court should have considered the legislative changes as a mitigating factor and imposed a habitual offender sentence of less than fifteen years.
Section 6 of Act 403 provides: "The provisions of this Act shall only have prospective effect." Additionally, the Louisiana Supreme Court, in State v. Barnes, 02-2059 (La.4/4/03), 845 So.2d 354, 354-355 (per curiam), held:
Under the rule set out in Louisiana jurisprudence, the changes mandated by 2001 La. Acts 403 do not apply to sentences imposed for crimes committed before the act's effective date. Operation of this rule extends to habitual offender sentences imposed pursuant to R.S. 15:529.1. (case citations omitted)
In State v. Dorthey, 623 So.2d 1276 (La. 1993), the Louisiana Supreme Court held that the trial judge is empowered to deviate from a mandatory minimum sentence in a habitual offender proceeding. The court stated:
If ... the trial judge were to find that the punishment mandated by R.S. 15:529.1 makes no "measurable contribution to acceptable goals of punishment" or that the sentence amounted to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," he has the option, indeed the duty, to reduce such sentence to one that would not be constitutionally excessive. Id., 623 So.2d at 1280-1281.
A mandatory minimum sentence is presumed to be constitutional. The burden is on the defendant to rebut the presumption of constitutionality by showing that he is exceptional. He must show he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Young, 94-1636 (La.App. 4 Cir. 10/26/95), 663 So.2d 525 at 528. A court may only depart from the mandatory sentence if it finds clear and convincing evidence in the case before it that would rebut the presumption of constitutionality. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672 at 676. It is not the role of the sentencing court to question the wisdom of the legislature in setting mandatory punishments for criminal offenses. Rather, "the sentencing court is only allowed to determine whether the particular offender before it has proven that the mandatory minimum sentence is so excessive in his case that it violates our constitution." State v. Johnson, supra, 709 So.2d at 677.
Defense counsel made extensive argument at the time of the habitual offender sentencing as to why the trial court should impose the minimum sentence of fifteen years. Counsel did not, however, argue that the mandatory minimum sentence of fifteen years was excessive. Nor did he *810 invoke the holding in Dorthey to request that the court deviate below the statutory minimum sentence.
In assigning reasons for the habitual offender sentence, the judge indicated that she had taken the new legislation into consideration. She also considered several aggravating factors.
Okay. Mr. Converse, I've considered your prior criminal conviction, and I've also taken into consideration that you had five separate counts of distribution and I noticed they were in a tight proximity, time wise, beginning in April of 2001 and finishing in MayMay the 10th. So, I do believe you were dealing drugs in Jefferson Parish. I don't believe this was an isolated incident. I'm convinced that you were in the business of drug trafficking. I also find one thing that disturbed me the most throughout the trial was that in the tape, you made reference to your people in Texas. So, I therefore feel that you were not only dealing drugs in Jefferson Parish, but you were bringing them in from another state. So, that being what I felt was something that meant something to me, and in spite of your attorney's argument, that you fell on to hard luck as most people do in the criminal justice system. But I also take into consideration your youth. I know that I'm aware of the movement in the law of distribution of drugs, and that our legislators are rethinking the time frames that we do incarcerate young people caught up in the disease of drug dealing. So, I look at you as a young person who made some bad choices, but nonetheless, you were dealing drugs in Jefferson Parish, and that's not good for this Parish. So, although I have the opportunity to give you 60 years in jail, that would be, I think of no good mostly to you. It might be great for the people of Jefferson Parish. So, I take into consideration your youth and that there has to be some time frame short of 60 years that will be a sentence that will A) mean something to you and again, will not throw away your life. Now, the State by filing a multiple bill demands that I give you a minimum of 15 years. I can't give you any less than that otherwise it would be an illegal sentence. And I'm taking into consideration your multiple counts. I'm taking into consideration the fact that you said you had people in Texas. On the other hand, to your favor, I'm taking into consideration your age. So, I'm going to sentence you to, on the multiple bill, to 18 years in the Department of Corrections which is exactly what I did on the charge, and I'm not going to give you any extra time because I think 18 years is a long time for someone of your age to sit in a penitentiary.
We do not find that the trial judge abused her wide discretion in imposing an eighteen-year habitual offender sentence. The record supports the sentence imposed. Defendant had a history of dealing narcotics, having been previously convicted of distribution of marijuana and cocaine. The trial judge considered the harm to society should she impose a lighter sentence. The term imposed was near the low end of the sentencing range, and the term was the same as defendant's original sentence on that count. We find no merit in this assignment.
In our review of the record for errors patent pursuant to La.C.Cr.P. art. 920, we find the sentence imposed was illegally lenient. The trial court failed to fully comply with the sentencing provisions of the underlying statute in imposing the habitual offender sentence. The law in effect at the time of the commission of the offense determines the penalty that applies *811 to the convicted defendant. State v. Rivers, 01-1251 (La.App. 5 Cir. 4/10/02), 817 So.2d 216, 221, writ denied, 02-1156 (La.11/22/02), 829 So.2d 1035.
At the time of defendant's offenses, La. R.S. 40:967(B)(4)(b) provided that those convicted of distribution of cocaine "shall be sentenced to a term of imprisonment at hard labor for not less than five years nor more than thirty years, with the first five years of said sentence being without benefit of parole, probation, or suspension of sentence...."[1] The judge ordered that defendant's habitual offender sentence be served without benefit of probation or suspension of sentence, as provided in La. R.S. 15:529.1(G), but did not impose the additional restriction of parole on the minimum sentence as prescribed by the underlying statute. Defendant's sentence is, therefore, illegally lenient. Neither defendant nor the State objected below, and the issue is not raised on appeal. However, an illegally lenient sentence can be noticed or recognized by the appellate court sua sponte without the issue being raised by the State in the trial court or on appeal. State v. Williams, XXXX-XXXX (La.11/29/01), 800 So.2d 790.
Under La. R.S. 15:301.1, a statute's requirement that a defendant be sentenced without benefit of parole, probation or suspension of sentence is self-activating. Therefore, we find no need to remand the sentence for correction of the sentence to impose the restriction on the right to parole.
In imposing defendant's original sentences, the trial court gave credit for time already served in the Jefferson Parish Correctional Center, but stated, "You will not be given any credit for the time you served thus far in the Jefferson Parish Correctional Center." The judge's order runs contrary to La.C.Cr.P. art. 880, which provides that "[a] defendant shall receive credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence." Additionally, there is nothing found in La.C.Cr.P. art. 894.2, pertaining to home incarceration, to indicate that a defendant is not entitled to credit for time spent in home detention prior to trial.
It is noted that the commitment indicates defendant was given credit "for all time served." When there is a conflict between the transcript and the minute entry, the transcript generally prevails. State v. Lynch, 441 So.2d 732, 734 (La. 1983). However, because La.C.Cr.P. Article 880 is self-activating, no corrective action is necessary by this court.
For the foregoing reasons the convictions and adjudication as a second felony offender are affirmed. We also affirm all sentences imposed on defendant.
AFFIRMED.
NOTES
[1] When a defendant is sentenced as a habitual offender, "[t]he penalty increase is computed by reference to the sentencing provisions of the underlying offense. Similarly, the conditions imposed on the sentence are those called for in the reference statute." State v. Fletcher, 03-60 (La.App. 5 Cir. 4/29/03), 845 So.2d 1213, 1222, quoting State v. Bruins, 407 So.2d 685, 687 (La. 1981).