928 So.2d 599 (2006)
STATE of Louisiana
v.
Jason LeBLANC.
No. 2005 KA 0885.
Court of Appeal of Louisiana, First Circuit.
February 10, 2006.
*600 Anthony G. Falterman, District Attorney, Donald D. Candell, Assistant District Attorney, Gonzales, Counsel for Appellee State of Louisiana.
Laura M. Pavy, New Orleans, Counsel for Defendant/Appellant Jason LeBlanc.
Before: CARTER, C.J., DOWNING, and GAIDRY, JJ.
GAIDRY, J.
The defendant, Jason LeBlanc, was indicted on one count of vehicular homicide, a violation of La. R.S. 14:32.1. He pleaded not guilty and was tried before a jury. The jury found defendant guilty as charged. The trial court sentenced defendant to a term of ten years at hard labor, with one year of the sentence to be served without benefit of probation, parole, or suspension of sentence. The trial court also suspended two years of the sentence and imposed a fine of $2,000.00. Defendant appeals, assigning one error by the trial court. We affirm.

FACTS
Alicia Marie Terrebonne, the sixteen-year-old victim, was due to return home around midnight on February 9, 2003 from her high school's "Sadie Hawkins" dance. Shortly before midnight, she telephoned her parents to advise them she was on her way home. After receiving another telephone call from Alicia's boyfriend at approximately 12:15 a.m., her father, John Terrebonne, became concerned and left home to look for her.
The Terrebonnes resided on Cemetery Road in Gonzales, Louisiana, only about a third of a mile from its intersection with Louisiana Highway 932. As he turned out of his driveway, Mr. Terrebonne observed flashing emergency lights near the intersection. Upon arriving at the intersection, he encountered an accident scene secured by police and emergency personnel. Mr. Terrebonne initially thought his daughter had been delayed in traffic due to the accident, but then noticed his daughter's automobile in the ditch on the left side of Louisiana Highway 932. After exiting his truck and attempting to go to his daughter's automobile, Mr. Terrebonne was advised by a deputy sheriff that his daughter had been killed in the accident.
Two eyewitnesses to the accident testified at trial. Chad Sagona testified that he was driving on Roddy Road/Joe Sevario Road (Louisiana Highway 932) with a passenger when he noticed a vehicle (later determined to be driven by defendant) approach him from the rear at a high rate of speed and remain very close behind him. *601 As Mr. Sagona came to an intersection with a four-way stop sign, he brought his vehicle to a slow stop to allow the vehicle behind him enough time to stop also. Mr. Sagona explained that he then accelerated rather quickly from the stop sign in order to gain some distance between his vehicle and the following vehicle as they continued on Highway 932. According to Mr. Sagona, the vehicle behind him was moving very fast and came in close proximity to the rear of his vehicle.
As Mr. Sagona approached the intersection of Norwood Road, he activated his right turn signal and noticed another vehicle immediately ahead (Alicia's automobile), and activated his left turn signal, preparing to turn left onto Cemetery Road. Defendant's vehicle passed Mr. Sagona's without slowing down, as Mr. Sagona was turning right onto Norwood Road. Given the speed of defendant's vehicle as it passed his, Mr. Sagona exclaimed to his passenger that "there was about to be a wreck."[1] Defendant's vehicle then struck Alicia's vehicle as she was in the process of turning, and the collision propelled the vehicles in opposite directions. The vehicles came to rest in opposite ditches along Highway 932.
Immediately following the collision, Mr. Sagona stopped, got out of his vehicle and went over to where defendant's vehicle had come to rest in an adjacent ditch. By the time Mr. Sagona arrived, defendant had already exited his vehicle. Mr. Sagona asked defendant if he was all right and defendant replied, "Yeah. You might want to check on that car down there." While defendant stayed near the roadway, Mr. Sagona went to the other automobile and found Alicia unconscious and her driver's door jammed. When Mr. Sagona returned to the roadway, defendant requested a cigarette lighter, to which Sagona replied that the last thing defendant needed to worry about at that time was a cigarette. Defendant responded by calling Mr. Sagona a "punk."
Ashley Patton was Mr. Sagona's passenger on the night of the accident and also witnessed the accident. Her testimony corroborated that of Mr. Sagona as to the left turn signal of Alicia's automobile being activated prior to the collision and the simultaneous nature of the turning maneuvers by Alicia and Mr. Sagona. Ms. Patton testified that after defendant's vehicle passed them, it struck Alicia's vehicle on the driver's side. Ms. Patton further confirmed Mr. LeBlanc's request for a cigarette lighter after the collision.
Shawn Meeks was a minister and the pastor of the Galvez Pentecostal Church located near the accident scene who lived on Cemetery Road at the time of the accident. Around midnight on February 9, 2003, Rev. Meeks was in bed and heard a "tremendous" collision. He immediately telephoned 911, dressed, and went to the accident scene. Rev. Meeks approached Alicia's automobile in the ditch and saw that she was seriously injured. As he could not get closer to her to render assistance, he placed his hands on the passenger's side windows and prayed for her until the paramedics arrived. Later that night, as Rev. Meeks was standing near defendant, he heard defendant state, "Oh, shit, I guess this will be another DUI for me."
Trooper Matthew Sinanan of the Louisiana State Police was the first trooper on the scene. When he arrived, an Ascension Parish Sheriff's deputy was already on the scene and had detained defendant in the back of her patrol unit. After learning *602 that the accident involved a fatality, Trooper Sinanan approached defendant and opened the door of the deputy sheriff's unit. Upon opening the door of the deputy sheriff's unit, Trooper Sinanan smelled a strong odor of alcoholic beverage inside the vehicle. Trooper Sinanan advised defendant of his constitutional rights, and defendant indicated he understood them. Upon speaking with defendant, Trooper Sinanan observed that he had "glassy" and bloodshot eyes, slurred speech, and that he swayed when he stood outside the unit. The odor of alcoholic beverage came from defendant's breath. Based upon the described physical characteristics and defendant's conduct, it was "very clear" to Trooper Sinanan that defendant was under the influence of alcohol.
State Police Trooper William Hunter also arrived at the scene to assist. Trooper Sinanan directed Trooper Hunter to administer a field sobriety test to defendant. Trooper Hunter also advised defendant of his constitutional rights, and defendant indicated that he understood them. After Trooper Hunter asked defendant to perform the field sobriety test, defendant consented, and then admitted that he was "drunk and should not have been on the road." Defendant further admitted to Trooper Hunter that he had consumed three large daiquiris at Extreme Daiquiris.
Defendant performed poorly on all three portions of the field sobriety test, which included the horizontal gaze nystagmus test, the walk-and-turn test, and the one-leg stand test. Trooper Hunter also detected a strong odor of alcoholic beverage on defendant's breath. He also noted defendant swayed when standing and slurred his speech. Trooper Hunter placed defendant under arrest and transported him to the Gonzales Police Department headquarters, where defendant consented to the administration of a blood-alcohol breath test. The results of the blood-alcohol breath test indicated a reading of .159 per cent.
Meanwhile, Trooper Sinanan conducted his investigation of the scene of the accident. Describing the physical evidence he observed, Trooper Sinanan explained that there was a four-foot skid mark in defendant's lane of travel just prior to the point of impact point with Alicia's vehicle, but no other physical evidence that defendant made any attempt to stop prior to the accident. Despite objection by defendant, Trooper Sinanan was allowed to offer his observation that the tire marks left by defendant's vehicle after the collision were not consistent with skid marks, but appeared to be acceleration marks. Over defendant's further objection, Trooper Sinanan testified that he observed no physical evidence suggesting that the victim had committed any traffic violation.

ASSIGNMENT OF ERROR
In his sole assignment of error, defendant argues that the trial court erred in allowing the State to present improper opinion testimony in the field of accident reconstruction. Specifically, defendant argues that despite the State's failure to qualify and offer Trooper Sinanan as an expert in accident reconstruction, he was allowed to offer a number of critical opinions about the mechanics of the accident. The objectionable testimony related in particular to the manner of causation of the tire marks located past the area where the collision occurred. Defendant argues that Trooper Sinanan's improper opinion testimony served to exonerate the victim of all fault even though it was clear that she turned left into the path of defendant's overtaking vehicle.
Louisiana Code of Evidence article 701 permits non-expert testimony in the form of opinions or inferences that are rationally *603 based on the perception of the witness and helpful to a clear understanding of his testimony or the determination of a fact in issue. Moreover, opinion testimony has been permitted by non-expert police officers based on training, investigation, perception of the scene and observation of physical evidence. Cooper v. Louisiana State Department of Transportation and Development, XXXX-XXXX, p. 4 (La.App. 1st Cir.6/25/04), 885 So.2d 1211, 1214, writ denied, XXXX-XXXX (La.11/8/04), 885 So.2d 1142.
Trooper Sinanan testified that he had been a trooper for nearly seven years and had participated in hundreds of motor vehicle accident investigations. According to Trooper Sinanan, the physical evidence at the scene was consistent with the witness accounts of the accident. Trooper Sinanan testified that the physical evidence indicated defendant's vehicle left skid marks consistent with braking four feet before impact. The point of impact to Alicia's automobile was at the driver's side between the driver's door and rear passenger door. Trooper Sinanan also testified that based upon their physical characteristics and appearance, the tire marks left by defendant's vehicle following the collision were consistent with acceleration as opposed to braking. Trooper Sinanan further testified based on his education and experience in accident reconstruction, that the physical evidence did not suggest the victim committed any traffic violation.
The general rule is that a lay witness is permitted to draw reasonable inferences from his or her personal observations. If the testimony constitutes a natural inference from what was observed, no prohibition against it as the opinion of a non-expert exists as long as the lay witness states the observed facts as well. State v. Casey, 99-0023, p. 12 (La.1/26/00), 775 So.2d 1022, 1033, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). A reviewing court must ask two pertinent questions to determine whether the trial court properly allowed lay opinion testimony: (1) was the testimony speculative opinion evidence or simply a recitation of or inferences from fact based upon the witness's observations; and (2) if erroneously admitted, was the testimony so prejudicial to the defense as to constitute reversible error. Id.
If the reviewing court determines that lay opinion testimony was improperly admitted, it must then proceed to the next question: whether that testimony was so prejudicial to the defense as to constitute reversible error. Erroneous admission of evidence requires reversal only where there is a reasonable possibility that the evidence might have contributed to the verdict. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Stated somewhat differently, the inquiry is whether the reviewing court may conclude that the error was harmless beyond a reasonable doubt, that is, whether the guilty verdict actually rendered was unattributable to the error. State v. Casey, 99-0023 at p. 13, 775 So.2d at 1033.
It has consistently been held that a law officer may testify as to matters within his personal knowledge acquired through his experience without first being qualified as an expert. See State v. Lowery, 609 So.2d 1125, 1128 (La.App. 2nd Cir.1992), writs denied, 617 So.2d 905 (La.1993). However, if a law officer such as a state police trooper is not qualified as an accident reconstruction expert, his testimony in the form of opinions is limited to those opinions based upon his rational perception of the facts and recollections pertaining to the scene of the accident. Whetstone v. Dixon, 616 So.2d 764, 768 (La. App. 1st Cir.), writs denied, 623 So.2d 1333 (La.1993). Although Trooper Sinanan was *604 not qualified as an expert, it is apparent from the record that most of his lay opinion testimony was limited to opinions based on his rational perceptions of the physical evidence of the accident scene.
However, we agree with defendant that Trooper Sinanan's opinion testimony relating to the manner of causation of the post-accident tire marks from defendant's vehicle was improperly admitted, as such testimony went beyond natural inferences from observed physical evidence and fell within the realm of "scientific, technical, or other specialized knowledge" which is the hallmark of expert testimony. Over defendant's objection, Trooper Sinanan was allowed to present testimony that "striations" in the skid marks parallel to the vehicle's drive shaft were characteristic of "yaw" due to acceleration rather than braking, but he offered no factual explanation of the basis of such conclusions. See La. C.E. art. 705(B). His use of such technical terms as "striations" and "yaw" demonstrate that the opinion testimony at issue was derived from technical training or education rather than natural, reasonable inference or purely personal experience. But we disagree that its admission constitutes reversible error, mandating reversal and a new trial.
Trooper Sinanan unequivocally concluded that "[e]verything [the other tire marks from both vehicles] after that four-foot skid mark was post [sic], after the collision." Thus, the issue of whether the tire marks made by defendant's vehicle past the point of impact were caused by acceleration or braking had no bearing on defendant's actions leading up to the fatal collision, as those marks were made after the collision had already occurred. Given Trooper Sinanan's other testimony that the four-foot skid mark was caused by braking of defendant's vehicle prior to impact, the guilty verdict was certainly unattributable to any opinion regarding post-collision movement of defendant's vehicle. We therefore conclude that there is no reasonable possibility that the erroneously-admitted testimony contributed to the verdict, and that its admission was harmless error.
As to the testimony regarding the absence of physical evidence of any traffic violation by Alicia, our review of such testimony shows that it did not amount to an opinion on the issue of ultimate fault for the accident, but rather testimony based upon Trooper Sinanan's rational perceptions of the absence of any physical evidence documenting movement by Alicia's automobile prior to impact. As such, the trial court did not abuse its discretion in permitting such testimony.
In summary, from our review of the record, we find no abuse of discretion in the trial court's rulings admitting lay opinion testimony by Trooper Sinanan, except for that relating to causation of the post-impact tire marks. All of Trooper Sinanan's lay opinion testimony on the relevant aspects of the physical evidence he observed was merely cumulative of the eyewitness testimony, and any error in admitting his opinion as to the causation of the post-impact tire marks was clearly harmless. See, e.g., Snearl v. Mercer, 99-1738, p. 32 (La.App. 1st Cir.2/16/01), 780 So.2d 563, 587; Starks v. Kelly, 435 So.2d 552, 555 (La.App. 1st Cir.1983).
The assignment of error is without merit. Accordingly, we affirm the conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The evidence showed that Louisiana Highway 932's intersections with Norwood Road and Cemetery Road are approximately 180 feet apart.