SUSAN M. CHEHARDY, Chief Judge.
li>On appeal, defendant challenges his conviction and sentence for possession with intent to distribute cocaine. For the following reasons, we affirm his conviction and sentence.

Procedural history

On May 16, 2013, the Jefferson Parish District Attorney’s Office filed a bill of information charging defendant, Dwayne White, with possession with intent to distribute cocaine, in violation of La. R.S. 40:967(A). After a one-day trial, which commenced on January 15, 2014, a twelve-person jury unanimously found defendant guilty as charged. On January 27, 2014, the trial judge sentenced defendant to imprisonment at hard labor for fifteen years, with the first two years to be served without benefit of parole, probation, or suspension of sentence.[1]
On March 27, 2014, the Jefferson Parish District Attorney’s Office filed a multiple offender bill of information, alleging defendant to be a second felony | .-¡offender under La. R.S. 15:529.1.[2] On May 1, 2014, the trial court began the hearing on the multiple offender bill of information, which was held over until May 2, 2014.
On May 2, 2014, the trial judge found that the State had proven that defendant was a second felony offender, vacated defendant’s original sentence, and imposed the enhanced sentence of twenty-five years at hard labor, without benefit of probation or suspension of sentence. Defendant’s timely motion for appeal was granted.

Facts

On May 6, 2013, Detective Robert Wim-berly and Detective Sal Mangano of the Narcotics Division of the Kenner Police Department were “working the area at Williams and Veterans” because there were numerous citizen complaints of narcotics trafficking and prostitution in that area. As part of their routine patrol, they were parked in their unmarked police unit in a parking lot, which serviced a conven *666 ience store, a fast food restaurant, and a motel.
As they watched, a “silver grey Volks-wagon Jetta” pulled into the parking lot and drove directly in front of them. As the car passed by, the detectives observed that the driver was not wearing a seatbelt. Immediately, Detective Wimberly engaged his vehicle’s lights and sirens, initiated a traffic stop, and pulled the vehicle over without incident.
When Detective Wimberly approached the vehicle, the driver, Dwayne White, later identified as defendant-herein, told the officer his name but admitted that he was not carrying his driver’s license. When Detective Mangano checked defendant’s criminal history, he learned that defendant had “two traffic attachments out of Jefferson Parish outstanding for his arrest.” Detective | ¿Wimberly placed defendant under arrest for the attachments, asked him to step out of his vehicle, and advised him of his rights, which defendant acknowledged he understood.
When Detective Wimberly conducted a pat-down of defendant to ensure that he did not have weapons, Detective Wimberly felt a bulge in defendant’s “left front pants pocket,” which Detective Wimberly removed. The “bulge” that Detective Wim-berly discovered turned out to be five clear, plastic sandwich bags, which contained “a bunch of rocks” that appeared to be crack cocaine. Detective Wimberly also found, in defendant’s coin pocket above his right front pocket, a “cellophane wrapper” from “the outside of a cigarette package with an additional four or five rocks inside of that.” Detective Wimberly field-tested the rocks, which tested positive for cocaine.
Marcelle Folse, a Forensic Chemistry Supervisor for the Jefferson Parish Sheriffs Crime Laboratory, was qualified as an expert in the analysis and identification of controlled dangerous substances. Ms. Folse testified that the seized evidence tested positive for cocaine. Ms. Folse weighed only the five sandwich bags that were found in defendant’s left front pocket, which, including the packaging, totaled 14 grams.
Sergeant Alvin Módica of the Jefferson Parish Sheriffs Office was accepted over defense objection as an expert in the field of distribution, quantity, packaging and value of narcotics. Sergeant Módica testified that he had been in the Narcotics Division for eleven years and had “made and been a part of hundreds of narcotics arrests.” As part of his training for the Narcotics Division, in addition to his initial training, he had completed approximately “300 hours of various schools for narcotics” and “60 hours through the University of Loyola in Criminal Justice.” He also stated that he had been qualified as an expert in packaging, value, and use |fiand distribution of illegal narcotics six times in the Twenty-Fourth Judicial District.
During defense counsel’s traversal, Sergeant Módica explained that, while he had no specific schooling in narcotics distribution, his knowledge is gained via “daily, ongoing learning experience that’s on the job training,” such as daily interactions with undercover officers, examining video recorded narcotics purchases, working with confidential informants, and interviewing individuals upon arrest.
Sergeant Módica testified that, after a “typical narcotics bust,” three overall factors — quantity, packaging, and dollar value — determine if the seized quantity of narcotics warrants a distribution charge. When asked the street value of 14 grams of crack cocaine, Sergeant Módica stated that the “bulk amount” was approximately $700.00 to $800.00.
Sergeant Módica testified that a typical “crack user” is generally not financially able to purchase more than five small .2 grams rocks at a time. Sergeant Módica *667 testified that crack sells for $10.00 per 0.1 gram. Further, generally rocks are .2 grams, which sell for $20.00 and is typically a “one-time use amount.” Further, Sergeant Módica testified that typically a user always has a “pipe on him” and, more times than not, a user will be discovered with a pipe but just a few, if any, rocks.
Sergeant Módica testified that, in his experience, the amount in this case is “way more than what a user would have, and it’s already packaged for sale.” In his opinion, 14 grams of crack cocaine in five different packages would have a street value of $1,400.00, which “would typically be a street level dealer.” Based on the testimony and evidence, the twelve-person jury unanimously found defendant guilty as charged.

IsLaw and Argument

On appeal, defendant raises two assignments of error: first, the trial court erred by allowing Sgt. Alvin Módica to testify as an expert on drug distribution and, second, the trial court erred by imposing an excessive sentence.
In his first assignment of error, defendant argues that the trial court erred in accepting Sergeant Módica as an expert in “drug distribution” and allowing him to testify. Defendant additionally, alludes that the trial court did not adequately perform the required “gatekeeping function” to deem Sergeant Módica a reliable expert. Defendant argues Sergeant Módi-ca has no scientific credentials to prove his claims, his assessments were based on conjecture, and he did not cite to other authority when arriving at conclusions. Defendant further argues permitting Sergeant Módica to provide his “subjective opinion” of defendant’s intention was in error. He specifically objects to Sergeant Modica’s testimony that he believed defendant intended to distribute crack cocaine.
In support of his argument that Sergeant Módica should not have been qualified as an expert, defendant first relies on La. C.E. art. 701, which oversees opinion testimony by lay witnesses, arguing the article was “never intended to permit a lay witness to subjectively interpret the meaning of a person’s intent.” Defendant additionally relies on State v. LeBlanc, 05-0885 (La.App. 1 Cir. 2/10/06), 928 So.2d 599, 604, where a police officer’s testimony was improperly admitted because his “testimony went beyond natural inferences observed from physical evidence.”
First, defendant’s reliance on La. C.E. art. 701[3] is misplaced because expert ^witnesses testimony is governed by La. C.E. art. 702.[4] Second, defendant’s reliance on LeBlanc, supra, is also misplaced because the LeBlanc court was considering a lay witness and only applied La. C.E. art. 701. LeBlanc, supra at 602-03.
Moreover, this Court has held that a police officer does not need scientific credentials or a scientific method in order to testify as an expert on the difference between sellers and users in narcotics cases. State v. Mosley, 08-1318 (La.App. 5 Cir. 5/12/09), 13 So.3d 705, 714, writ denied, 09-1316 (La.3/5/10), 28 So.3d 1002. Further, scholarly writing and peer review are *668 not commonly associated with police work. State v. Esteen, 02-1241 (La.App. 5 Cir. 4/29/03), 846 So.2d 167, 175-76, writ denied, 03-1486 (La.1/9/04), 862 So.2d 978.
In a nearly identical case, this Court found no error in qualifying a police officer as an expert in the packaging and distribution of narcotics, specifically crack cocaine. State v. Johnson, 10-209 (La.App. 5 Cir. 10/12/10), 52 So.3d 110, 121-123, writ denied, 10-2546 (La.4/1/11), 60 So.3d 1248 (a seven-year narcotics veteran with 240 hours of specialized narcotics training, who had been accepted 13 times as an expert in this field, was qualified as an expert in the use, packaging, and distribution of narcotics). See also Addison, 920 So.2d at 896-97; Esteen, 846 So.2d at 175-76.
“The trial court has wide discretion in determining the competence of an expert witness and its ruling on the qualification of the witness will not be disturbed absent an abuse of discretion.” Addison, 920 So.2d at 895-96; State v. Torregano, 03-1335 (La.App. 5 Cir. 5/11/04), 875 So.2d 842, 847. Upon review by an appellate court, consideration will include whether a witness has previously [sbeen qualified as an expert. Addison, 920 So.2d at 897; Torregano, 875 So.2d at 847.
In this case, defendant has failed to establish how the trial court lacked in performing the requisite “gatekeeping” function in qualifying Sergeant Módica as an expert. Similar to other cases, Sergeant Módica is an eleven-year veteran in the Narcotics Division, with 300 hours of specialized training, involvement in hundreds of arrests, previous qualifications as an expert, and communications with countless individuals such as undercover officials and confidential informants, with most of his education stemming from “on the job training.” Defendant failed to demonstrate how Sergeant Modica’s experience, schooling, and training are so inadequate that it was an error to qualify him as an expert. Accordingly, we find that the trial court did not abuse its broad discretion in qualifying Sergeant Módica as an expert in packaging, value, and use and distribution of illegal narcotics. This assignment of error lacks merit.
In his second assignment of error, defendant argues that his enhanced sentence of twenty-five years is excessive. Defendant contends that the court was focused on punishment and not the practicality of rehabilitation opportunities, which has permitted “little chance to overcome his drug habit and become a productive member of society.”
This Court has held that failing to file a motion to reconsider sentence, or failing to state the specific grounds upon which the motion is based, limits a defendant to a bare review of the sentence for constitutional excessiveness. . See, e.g., State v. Hill, 12—495 (La.App. 5 Cir. 12/18/12), 106 So.3d 1209, 1212; State v. Hunter, 10-552 (La.App. 5 Cir. 1/11/11), 59 So.3d 1270, 1272; State v. Alvarez, 08-558 (La.App. 5 Cir. 8/31/10), 47 So.3d 1018, 1022. Here, the record shows defendant merely objected to the excessiveness of the sentence and did not make a |atimely oral or written motion to reconsider sentence pursuant to La.C.Cr.P. art. 881.1(A)(1). As such, defendant is only entitled to a review for constitutional excessiveness.
Both the Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution govern whether a sentence is constitutionally excessive and therefore invalid. A “sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering.” State v. Nguyen, 06-969 (La.App. 5 Cir. 4/24/07), 958 So.2d 61, 64, writ denied, 07-1161 (La.12/7/07), 969 So.2d 628. Furthermore, a “sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to *669 society, it shocks the sense of justice” or makes no reasonable contribution to acceptable penal goals. State v. Guzman, 99-1753 (La.5/16/00), 769 So.2d 1158, 1167; State v. Lawson, 04-334 (La.App. 5 Cir. 9/28/04), 885 So.2d 618, 622.
When imposing sentences, a trial judge has broad discretion in imposing a sentence within statutory limits and a reviewing court may not set aside a sentence in the absence of manifest error of discretion. State v. Williams, 03-3514 (La.12/13/04), 893 So.2d 7; Hill, 106 So.3d at 1212. On appeal, the issue is not whether a different sentence might have been more appropriate, but rather, whether the trial court abused its discretion. Williams, supra; State v. Dorsey, 07-67 (La.App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130, writ denied, 08-1649 (La.4/17/09), 6 So.3d 786. In reviewing a trial court’s sentencing discretion, three factors are considered: “1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts.” Alvarez, 47 So.3d at 1022; State v. Pearson, 07-332 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 656.
|lnIn this case, defendant’s sentence is similar to, and in some instances more lenient than, sentences imposed for analogous crimes and affirmed by this Court. See State v. Wilson, 09-108 (La.App. 5 Cir. 12/29/09), 30 So.3d 149, 157 (20 years at hard labor as a second felony offender not constitutionally excessive where underlying conviction was for distribution of cocaine); State v. Converse, 03-0711 (La.App. 5 Cir. 12/30/03), 864 So.2d 803, 810, writ denied, 04-195 (La.6/4/04), 876 So.2d 74 (18 years at hard labor as second felony offender not excessive where underlying conviction was for distribution of cocaine).
In the instant case, the trial judge sentenced defendant well within the statutory guidelines, with a term of imprisonment of less than one half of the maximum for a second time offender[5] with an underlying offense of possession with intent to distribute cocaine. We find that defendant’s twenty-five year sentence is not excessive. This assignment of error lacks merit.

Errors Patent

Our review of the record for errors patent, according to La. C.Cr.P. art. 920, has revealed no errors that require correction. Based on the foregoing, defendant’s conviction and sentence are affirmed.
AFFIRMED.

. Defendant filed a premature motion for appeal after he was convicted and sentenced for the offense but prior to the multiple bill adjudication; however, that procedural defect was cured by the subsequent sentencing as a multiple offender. See State v. Williams, 02-852 (La.App. 5 Cir. 1/28/03), 839 So.2d 348, 357, writ denied, 03-596 (La.6/6/03), 845 So.2d 1089; State v. Balser, 96-443 (La.App. 5 Cir. 11/14/96), 694 So.2d 351, 354. Further, in his case, defendant filed a second motion for appeal after his multiple offender adjudication and sentencing.

. In the multiple offender bill of information, the State alleged that, on January 5, 2004, defendant pled guilty to possession of cocaine, in violation of La. R.S. 40:967(C), in Orleans Parish.

. La. C.E. art. 701 states, "[i]f the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are: (1) Rationally based on the perception of the witness; and (2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.”

. La. C.E. art. 702 states, ”[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.” State v. Addison, 05-378 (La.App. 5 Cir. 12/17/05), 920 So.2d 884, 895.

. Under La. R.S. 40:967(B)(4)(b) and La. R.S. 15:529.1(A)(2), defendant faced a sentencing range of fifteen to sixty years at hard labor.