CARAWAY, J.
 

 I , Richard L. Davis was indicted and subsequently convicted by a unanimous 12-person jury of one count of aggravated rape (victim under age 13) and one count of indecent behavior with juveniles, violations of La. R.S. 14:42(A)(4) and La. R.S. 14:81, respectively. The case was originally tried as a death penalty case, and Davis was given the death penalty for the aggravated rape. The Louisiana Supreme Court remanded the case to the First Judicial District Court for resentencing Davis to life imprisonment at hard labor without benefit of parole, probation, or suspension
 
 *805
 
 of sentence.
 
 State v. Davis,
 
 08-1378 (La.12/12/08), 995 So.2d 1211.
 
 [1]
 

 Davis initially received a concurrent seven-year hard labor sentence on the indecent behavior conviction. However, upon remand, the trial court amended this sentence to run consecutively to the aggravated rape sentence. Motions for post-verdict judgment of acquittal and new trial were denied. After resentencing, a motion to reconsider sentence regarding the amendment of the indecent behavior with juveniles sentence was also denied. This appeal followed. We affirm the convictions and aggravated rape sentence. We reinstate the original sentence on the indecent behavior with juveniles conviction.
 

 Facts
 

 An amended indictment charged Davis with the aggravated rape of K.F. based upon allegations that Davis had vaginal, anal, and oral sexual | ¿intercourse with the five-year-old.
 
 [2]
 
 The indictment also charged that between October of 1996 and September 16, 1997, Davis committed the offense of indecent behavior with juveniles upon J.B.
 

 The direct evidence of the two crimes is not now challenged on sufficiency grounds but is relevant for consideration of the assignment of error regarding the admissibility of other crimes evidence used by the prosecution. Regarding the crime against J.B., the state presented the testimony of J.B. to show that she and Davis had a sexual relationship shortly after J.B.’s 16th birthday when he was 24 years old and married. Regarding the aggravated rape of K.F., the state presented evidence through the testimony of K.F., who was five years old at the time of the sexual assault. The state also presented the testimony of Davis’s girlfriend and a codefen-dant, Melissa Ticer, who was charged with Davis for the crime. The evidence showed that Davis had performed various sexual acts including oral sex, fondling, and vaginal and anal penetration upon K.F. on multiple occasions. Evidence also showed that Davis inserted a marker into the child’s vagina on one occasion. On a number of occasions, Davis had drugged the child with Trazadone to make her sleep during the acts. Tieer’s testimony implicated Davis. Ticer testified that Davis drugged the child and that Davis exposed the child to Internet pornography. Ticer’s testimony also included her eyewitness accounts of Davis’s various (approximately 20) sexual acts with the child during a four-month period. She also | ^admitted to her own participation in the acts, although she claimed her actions were at the direction of Davis.
 

 The state introduced other crimes evidence against Davis. These bad acts consisted of evidence regarding Davis’s indictment for aggravated oral sexual battery of Davis’s child, A.D., and his subsequent guilty plea to second degree battery for the offense. The state also introduced J.B.’s testimony that she had viewed images of nude or partially undressed children between the ages of 10 and 13 on Davis’s computer in 1999. There was also other crimes evidence pertaining to Davis’s promotion of prostitution activity and sexual encounters in 1998 with one 16 and two 14-year-old girls.
 

 Through the testimonies of Ticer’s roommate and cellmate, the defense sought to establish that it was Ticer who
 
 *806
 
 committed the offenses upon K.F. and that she was seeking to put the blame on Davis.
 

 After considering the evidence, a unanimous jury convicted Davis on the two counts as charged. The trial court denied both motions for new trial and post-verdict judgment of acquittal. Davis received the death penalty on the aggravated rape conviction and a concurrent seven-year hard labor sentence on the conviction for indecent behavior with juveniles. Upon resen-tencing, the trial court stated that the decision to run the indecent behavior with juveniles sentence concurrently “was conditioned in part on the fact that the sentence of death was the outcome by the jury on count one.” On those grounds, the court ordered the seven years to run consecutively with the life sentence. This appeal followed.
 

 \4Piscussion
 

 I.
 

 On appeal, Davis first argues that the trial court erred in admitting various other crimes evidence which “provided a sordid story about the man on trial, founded on hearsay and other inadmissible evidence.” Davis argues that this evidence unconstitutionally violated his right to due process of law and denied him a fair trial.
 

 The state filed two notices of its intent to introduce evidence of similar crimes, wrongs, or acts in sex offense cases pursuant to La. C.E. arts. 404(B) and 412.2. At an initial hearing on June 2, 2008, the court considered defendant’s motion
 
 in li-mine
 
 which contested the state’s first notice. Therein, the state listed four incidents which included Davis’s April 26, 2004 guilty plea to second degree battery upon his son, A.D., Davis’s May 2, 1998 guilty plea to promotion of prostitution, the events giving rise to the aggravated rape of K.F. between October 2004 and January 2005, and the events supporting the indecent behavior with juveniles offense relating to J.B. In argument, the defense contended that second degree battery was not a sexual offense, that the promotion of prostitution did not show lustful disposition and that the admission of the offenses would unduly prejudice Davis.
 

 The court rejected Davis’s argument under La. C.E. art. 412.2 on the grounds that the evidence showed Davis’s lustful disposition toward children and that the probative value of the evidence outweighed any prejudicial effect. Defense counsel noted an objection.
 

 |bA second hearing concerned the state’s notification of its intent to use evidence relating to the above-mentioned computer images, which the state characterized as “child pornography.” The state also proposed to introduce evidence of Davis’s sexual activities with four girls ranging in age from 14-16 years old and the testimony of the two girls whom Davis incited to prostitution. The state sought to utilize “narrative detail” evidence relating to the incidents.
 

 After a hearing in which J.B. and four other girls testified, the court found the other crimes evidence relating to promotion of prostitution and Davis’s sexual acts with minor girls admissible to show Davis’s intent, preparation, plan, knowledge, absence of mistake or accident. The court also found that the evidence showed a lustful disposition toward children. Defense counsel once again noted an objection. Additionally, before trial, the court ruled that the testimony concerning the computer images was relevant and probative to show Davis’s lustful disposition toward children. Defense counsel objected to all rulings.
 

 The following provisions of our law are relevant to the issues raised concerning Davis’s prior bad acts and other crimes.
 
 *807
 
 The crime of aggravated rape is defined in La. R.S. 14:42(A)(4) as follows:
 

 A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
 

 (4) When the victim is under the age of thirteen years. Lack of knowledge of the victim’s age shall not be a defense.
 

 | ^Aggravated rape is a general intent crime.
 
 State v. Morgan,
 
 99-1895 (La.6/29/01), 791 So.2d 100;
 
 State v. Wallace,
 
 41,720 (La.App.2d Cir.1/24/07), 949 So.2d 556.
 

 La. R.S. 14:81(A)(1) provides:
 

 A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:
 

 (1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons. Lack of knowledge of the child’s age shall not be a defense.
 

 Indecent behavior with juveniles is a specific intent crime requiring the state to prove the defendant’s intent to arouse or gratify a sexual desire by actions with a child.
 
 State v. Caston,
 
 43,565 (La.App.2d Cir.9/24/08), 996 So.2d 480.
 

 La. C.E. art. 412.2 addresses the admission of evidence of similar crimes, wrongs, or acts in sex offense cases as follows:
 

 A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused’s commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.
 

 B. In a case in which the state intends to offer evidence under the provisions of this Article, the prosecution shall, upon request of the accused, provide reasonable notice in advance of trial of the nature of any such evidence it intends to introduce at trial for such purposes.
 

 |7C. This Article shall not be construed to limit the admission or consideration of evidence under any other rule.
 

 Louisiana C.E. art. 412.2 was enacted following
 
 State v. Kennedy,
 
 00-1554 (La.4/3/01), 803 So.2d 916. The provision allows admission of evidence of other similar crimes, even for general intent crimes such as aggravated rape, when the victim in the case at issue is a child under the age of 17.
 
 State v. Zones,
 
 34,070 (La.App.2d Cir.4/3/02), 814 So.2d 113,
 
 writ denied,
 
 02-1280 (La.11/27/02), 831 So.2d 269.
 

 Other crimes, wrongs, or acts involving sexually assaultive behavior or which indicate a lustful disposition toward children may be admissible under La. C.E. art. 412.2 if their probative value substantially outweighs the danger of unfair prejudice and confusion of the issues.
 
 State v. Johnson,
 
 43,843 (La.App.2d Cir.1/28/09), 2 So.3d 606; La. C.E. art. 403.
 

 La. C.E. art. 404(B) addresses the admissibility of other crimes evidence generally and in relevant part states as follows:
 

 (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show he acted in
 
 *808
 
 conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the present proceedings.
 

 La. C.E. art. 403 regarding the exclusion of relevant evidence reads as follows:
 

 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of |8unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
 

 Generally, a trial court’s ruling on the admissibility of evidence of other crimes will not be overturned absent an abuse of discretion; the introduction of inadmissible other crimes evidence results in a trial error subject to harmless error analysis on appeal.
 
 State v. Parker,
 
 42,311 (La.App.2d Cir.8/15/07), 963 So.2d 497,
 
 writ denied,
 
 07-2053 (La.3/7/08), 977 So.2d 896.
 

 The provisions of La. C.E. art. 804, concerning hearsay when the declarant is unavailable, state in pertinent part:
 

 A. Definition of unavailability. Except as otherwise provided by this Code, a declarant is “unavailable as a witness” when the declarant cannot or will not appear in court and testify to the substance of his statement made outside of court. This includes situations in which the declarant:
 

 * * * * *
 

 (3) Testifies to a lack of memory of the subject matter of his statement.
 

 * * * * ⅜
 

 B. Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
 

 [[Image here]]
 

 5) Complaint of sexually assaultive behavior. A statement made by a person under the age of twelve years and the statement is one of initial or otherwise trustworthy complaint of sexually assaultive behavior.
 

 La. C.E. art. 803 provides exceptions to the hearsay rule and in pertinent part states as follows:
 

 The following are not excluded by the hearsay rule even though the declarant is available as a witness:
 

 (8) Public records and reports.
 

 (a) Records, reports, statements, or data compilations, in any form, of a public office or agency setting forth:
 

 (i) Its regularly conducted and regularly recorded activities;
 

 |3(ii) Matters observed pursuant to duty imposed by law and as to which there was a duty to report; or
 

 (iii) Factual findings resulting from an investigation made pursuant to authority granted by law. Factual findings are conclusions of fact reached by a governmental agency and may be based upon information furnished to it by persons other than agents and employees of that agency.
 

 *
 
 i\i
 
 ⅜
 

 (22) Judgment of previous conviction. Evidence of a final judgment, entered after a trial or upon a plea of guilty (but not upon a plea of nolo contendere), adjudging a person guilty of a crime punishable by death or imprisonment in
 
 *809
 
 excess of six months, to prove any fact essential to sustain the judgment. This exception does not permit the prosecutor in a criminal prosecution to offer as evidence the judgment of conviction of a person other than the accused, except for the purpose of attacking the credibility of a witness. The pendency of an appeal may be shown but does not affect admissibility.
 

 Second Degree Battery
 

 The first evidence of other crimes or bad acts objected to by Davis involved his 2004 second degree battery conviction involving his four-year-old biological son, A.D. In proof of the bad act, the state introduced into evidence a certified copy of the court minutes reflecting Davis’s guilty plea to second degree battery. Additionally, the state presented the testimony of A.D.’s babysitter, Sherry Fields, and the testimony of J.B., who first learned of the events from A.D. Fields testified that on one occasion, as she got A.D. ready for bed, the child asked her if she “lik[ed] his willie.” Fields testified that the child volunteered that his “daddy liked to suck and play with his willie.” When J.B. got home, Fields immediately told her about the incident. The following morning, Fields and J.B. talked to A.D. He told them that his daddy “lik[ed] to play with his willie and that he would do the same.” The four-year-old child also told Fields that he would perform oral sex on his father. Fields testified that she and J.B. notified the police.
 

 |inJ.B. testified that at the time of trial, A.D. was eight years old and did not recall the events discussed above.
 
 [3]
 
 Regarding A.D.’s statements, J.B. corroborated Fields’s testimony. She also testified that when she spoke with A.D. the following morning, he told her that these events occurred in the father’s bedroom when “his dad was on top of him.” J.B. testified that she and Fields went to the Haughton police department where she spoke with Officer Terry Yetman. She had A.D. with her and he told the officer that he “touched his father’s willie.” J.B. also testified that Davis was prosecuted on the charges but “received a lesser charge and was court ordered to release all rights to [A.D.].”
 

 In addition to this evidence, the state introduced a certified copy of the bill of information charging Davis with the oral sexual battery of A.D. with a copy of Davis’s fingerprints. The state also presented the testimony of the investigating officer, Terry Yetman. Officer Yetman testified that J.B. contacted him on July 15, 2003, regarding allegations relating to Davis and her son. Officer Yetman stated that he forwarded sexual charges to the Bossier Parish District Attorney’s office. He testified that he determined Davis’s birth date as March 21, 1972, and he identified Davis in court as the defendant in the subject proceedings.
 

 At trial, Davis objected to the introduction of all of this evidence. The trial court summarily denied the objections on the grounds given in the pretrial rulings. Davis reurges his objection to the hearsay nature of J.B, |uand the babysitter’s testimony and argues undue prejudice in the introduction of the charging documents and arrest information.
 

 Given the broad discretion afforded to the trial court in these matters, we find the evidence to have been properly admitted. The facts regarding Davis’s previous sexually assaultive behavior toward his four-year-old child was extremely relevant
 
 *810
 
 to show other sexually assaultive behavior to a young child, as well as a lustful disposition toward young children. The evidence of Davis’s guilty plea to second degree battery is admissible as an exception to the hearsay evidence rule under La. C.E. art. 803(22). Likewise, the certified copy of the bill of information charging Davis with the oral sexual battery of A.D. was properly introduced into evidence as an exception to the hearsay rule under La. C.E. art. 803(8)(a)(iii) as a record or report setting forth factual findings resulting from an investigation made pursuant to authority granted by law.
 
 State v. Jones,
 
 36,553 (La.App.2d Cir.1/29/03), 840 So.2d 7,
 
 writ denied,
 
 03-0956 (La.10/03/03), 855 So.2d 309. Officer Yetman testified to events which were within his personal knowledge and completed the story of events. Any prejudice which may have resulted from his testimony that “sexual allegations” were referred to the District Attorney was cumulative in light of the bill of information which was properly introduced into evidence.
 

 Finally, Davis’s argument regarding the hearsay testimony of J.B. and Fields is precluded by La. C.E. art. 804 which sets forth a hearsay exception in some instances where the declarant is unavailable. Here, both sides stipulated that the child, if called, would say he had no memory of the | ^events. Thus, A.D.’s lack of memory on the subject rendered him unavailable as a witness under La. C.E. art. 804(A)(3). J.B. and Fields’s testimony regarding A.D.’s initial complaint of sexually assaul-tive behavior to them was admissible under La. C.E. art. 804(B)(5), which excludes from the hearsay exception a statement of initial or otherwise trustworthy complaint of sexually assaultive behavior made by an unavailable person under the age of 12 years. The extremely probative nature of the evidence outweighs any undue prejudice to Davis. On these grounds, Davis’s argument has no merit.
 

 Prostitution Activity/Acts with Underage Girls
 

 As evidence of other bad acts by Davis, the state introduced the testimony of J.B. and D.G. that Davis involved them in prostitution when each was 16 years old.
 
 [4]
 
 The state also presented the testimony of J.B., D.W., C.P., and S.S. to show that Davis had engaged in other acts of indecent behavior with juveniles. J.B. testified that she was 16 and Davis, 24, when her relationship with him became sexual. D.W. testified that she was 16 in 1998 when she and Davis engaged in consensual sex on two occasions. C.P. testified that she was 14 when Davis forcibly had sex with her without her permission. S.S. testified that she was 14 when she had consensual sex with Davis about three times after meeting him on the Internet.
 

 |lsThe evidence of Davis having sex with J.B. when she was under the age of 17 obviously was the state’s direct proof of the charged offense of indecent behavior with a juvenile. Moreover, in a prosecution for indecent behavior with juveniles, it is proper to admit proof of similar but disconnected crimes to show the specific intent element of the charged crime.
 
 State v. Jackson,
 
 625 So.2d 146 (La.1993);
 
 State v. Wallace, supra.
 
 Thus, this type of evidence has been held to be useful in negating any defense that the defendant acted without intent or that the acts were accidental.
 
 Id.
 
 Moreover, evidence of Davis’s propensity for sexual relations with minor girls under the age of 17 and promotion of minor prostitution with adult
 
 *811
 
 males would be relevant to indicate a lustful disposition toward juvenile girls and admissible as proof of the indecent behavior with juveniles offense.
 

 The two girls’ testimony relating to the prostitution was corroborated by the bill of information charging Davis with promotion of prostitution and his subsequent guilty plea to the charge. Challenges for the lack of corroboration and unreliability of the testimony were presented to the jury through the face-to-face confrontation of the witnesses by defense counsel.
 

 Computer Images
 

 The final evidence of defendant’s bad act regarded J.B.’s testimony of her observation of nude or semi-nude computer images of girls aged 10-13 on a computer which she and Davis owned. J.B. testified that after the birth of A.D. in June of 1999, when she and Davis resided together in Shreveport, she found a computer disk which was hidden in a closet. She placed the |14disk in the couple’s computer and observed “several pictures of young girls,” “before they hit puberty.” J.B. testified that in her estimation the girls were between the ages of 10 and 13. She testified that “they were not dressed. I don’t recall them doing anything.” She also stated that, “I remember they were just standing or sitting nude.”
 
 [5]
 

 Davis argues that evidence of his possession of “child pornography” was “based on supposition and without any corroboration” and was “neither proven to belong to Davis” nor proven to contain “legally defined pornography.”
 

 We find Davis’s argument relating to the admissibility of J.B.’s testimony to be without merit. While J.B. could not testify that she observed Davis recording the images, she did state that only she and Davis had access to the computer and that she confronted Davis about the images. No other explanation for the images was suggested by the defense. The jury heard J.B.’s description of the bad acts, and she was fully cross-examined by the defense. Any mention of “child pornography” by the state in pleadings or in court proceedings was made during pretrial proceedings and out of the presence of the jury and did not prejudice Davis. Moreover, the evidence was relevant to show Davis’s continued obsession with and lustful disposition toward young children and girls. Because the probative nature of the evidence outweighs any prejudice, the court’s ruling for admissibility of the evidence under La. C.E. arts. 412.2 and 403 was within its discretion.
 

 _bu.
 

 In his second assigned error, Davis argues that KF.’s mother was erroneously allowed to state that in her opinion Davis was the “architect of what was done.” Davis asserts that this was inadmissible opinion evidence that was not based on personal knowledge of the facts and which was “unfairly prejudicial.”
 

 Relating to lay opinion testimony, La. C.E. art. 701 provides:
 

 If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
 

 (1) Rationally based on the perception of the witness; and
 

 (2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.
 

 A reviewing court must ask two pertinent questions to determine whether the trial court properly allowed lay opinion testimony: (1) was the testimony specula
 
 *812
 
 tive opinion evidence or simply a recitation of or inferences from facts based upon the witness’s observations; and (2) if erroneously admitted, was the testimony so prejudicial to the defense as to constitute reversible error.
 
 State v. LeBlanc,
 
 05-0885 (La.App. 1st Cir.2/10/06), 928 So.2d 599.
 

 As a general rule, a lay witness is permitted to draw reasonable inferences from his or her personal observations. If the testimony constitutes a natural inference from what was observed, no prohibition against it as the opinion of a non-expert exists as long as the lay witness states the observed facts as well.
 
 State v. Casey,
 
 99-0023 (La.1/26/00), 775 So.2d 1022, 1033,
 
 cert. denied,
 
 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
 

 [1fiOn direct examination by the state, the mother of K.F. testified that she first met Davis in 2000 after which she and Davis became friends. During a period of time in 2005 when KF.’s mother and father were having marital difficulties, her mother allowed other people to watch her children. She testified that those people included Davis and Ticer, with whom her children often stayed. In early 2005, K.F. told her what Davis and Ticer had done. On cross-examination, the defense sought to elicit testimony to show that Davis’s codefendant, Melissa Ticer, was the main actor in the crime. On redirect by the state, the following exchange occurred:
 

 Q. Did you draw any distinction in your mind from based on what [K.F.] told — let me just ask it this way. Based on what [K.F.] told you and the details of what she said who did she describe as being more responsible for the acts upon her?
 

 A. Rick.
 

 [[Image here]]
 

 Q. Based on — and your statement to Deputy Brooks essentially what your [sic] largely doing is giving her the background and then telling her what [K.F.] told you, right?
 

 A. Right.
 

 Q. Mr. Golden asked [sic] you didn’t see this stuff happen, you’re not giving eyewitness account?
 

 A. Right.
 

 Q. Whatever you may have said in the statement based on what you heard from [K.F.] who did you believe was the architect of what was done?
 

 At that point, defense counsel lodged an objection to KF.’s answer. Before the court was able to overrule the objection, the witness named Davis in answer to the state’s question. It is this exchange which is the subject of the assignment of error.
 

 From K.F.’s testimony, she primarily reported the facts of Davis’s involvement with her daughter and his opportunity to commit the crime. She also reported the initial revelation of the crime by her daughter and was 117obviously aware of the details of Davis’s actions which K.F. testified to at trial. Her view regarding Davis’s role as the architect of the assaults upon her child was drawn from the reasonable and natural inferences from the facts. To the extent that her conclusion elevated Davis’s role in the matter above that of Ticer’s, we find that conclusion as a harmless expression of her opinion since both parties were shown to have been involved in the crime. This assignment of error is without merit.
 

 III.
 

 Davis also argues that the trial court erred in prohibiting him from offering details of independent bad acts by Melissa Ticer, denying him the right to present a defense, in violation of due process of law as guaranteed by the United States and Louisiana Constitutions.
 

 
 *813
 
 On October 25, 2007, Davis filed a Notice of Intent to Use Other Crimes Evidence Pursuant to La. C.E. arts. 404(B) and 412.2 relating to evidence that code-fendant, Melissa Ticer, sexually assaulted another 4-year-old child. Davis proposed to offer the evidence to show Ticer’s opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident regarding the crime upon K.F., as well as her lustful disposition toward children.
 

 On December 6, 2007, the state responded with a Motion in Limine to Limit Questioning of codefendant, Melissa Ticer, pursuant to La. C.E. arts. 607 and 608(B).
 

 La. C.E. art. 607 reads as follows: Attacking and supporting credibility generally
 

 |1SA. Who may attack credibility. The credibility of a witness may be attacked by any party, including the party calling him.
 

 B. Time for attacking and supporting credibility. The credibility of a witness may not be attacked until the witness has been sworn, and the credibility of a witness may not be supported unless it has been attacked. However, a party may question any witness as to his relationship to the parties, interest in the lawsuit, or capacity to perceive or to recollect.
 

 C. Attacking credibility intrinsically. Except as otherwise provided by legislation, a party, to attack the credibility of a witness, may examine him concerning any matter having a reasonable tendency to disprove the truthfulness or accuracy of his testimony.
 

 D. Attacking credibility extrinsically. Except as otherwise provided by legislation:
 

 (1) Extrinsic evidence to show a witness’ bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness.
 

 (2) Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness’ testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.
 

 Additionally, La. C.E. art. 608(B) provides as follows:
 

 B. Particular acts, vices, or courses of conduct. Particular acts, vices, or courses of conduct of a witness may not be inquired into or proved by extrinsic evidence for the purpose of attacking his character for truthfulness, other than conviction of crime as provided in Articles 609 and 609.1 or as constitutionally required.
 

 In its motion, the state alleged that it had advised the defendant by supplemental discovery that independent allegations of sexual abuse had been made against Ticer by parties unrelated to this case. Pursuant to La. C.E. art. 608(B) the state argued that the defendant was prohibited from | ^questioning Ticer about these matters, but that Article 607 allowed limited questioning about these unrelated allegations to explore for the jury whether the state had leverage over her due to those allegations.
 

 Prior to opening statements, the court addressed the state’s motion. Davis sought to put on testimony from the other alleged victim or the victim’s mother to show that it was Ticer who procured Davis to commit the sexually abusive acts upon K.F. and to show Ticer’s lustful disposition toward young children which precipitated her to act on her own. The court deferred
 
 *814
 
 ruling at that time and asked the lawyers to modify them opening statements accordingly. During Ticer’s testimony, the court excused the jury and allowed further arguments by counsel on the issue. Davis essentially argued that his right to present a defense required that he be allowed to put on evidence of Tieer’s lustful disposition toward children by putting on testimony of an alleged sexual assault by Ticer of another four-year-old girl.
 

 The trial court granted the state’s motion on the grounds that Ticer had demonstrated her lustful disposition through her own testimony and that the unrelated allegations would be cumulative evidence. The court also concluded that La. C.E. art. 412.2 was not applicable to witnesses.
 

 The Sixth Amendment of the United States Constitution and Article I, § 16, of the Louisiana Constitution guarantee an accused in a criminal prosecution the right to be confronted with the witnesses against him. The primary purpose behind this right is to secure for the defendant the opportunity for cross-examination.
 
 Davis v. Alaska,
 
 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974);
 
 State v. Tauzin,
 
 38,-436 (La.App.2d Cir 8/18/04), 880 So.2d 157;
 
 State v. Hotoph,
 
 99-243 (La.App. 5th Cir.11/10/99), 750 So.2d 1036,
 
 units denied,
 
 99-3477 (La.6/30/00), 765 So.2d 1062, and 00-0150 (La.6/30/00), 765 So.2d 1066.
 

 Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.
 
 State v. Hillard,
 
 398 So.2d 1057 (La.1981);
 
 State v. Tauzin, supra.
 
 The scope and extent of cross-examination is within the discretion of the trial judge, whose ruling will not be disturbed absent an abuse of discretion.
 
 State v. Garrison,
 
 400 So.2d 874 (La.1981);
 
 State v. Tauzin, supra; State v. Hotoph, supra.
 
 An accused also has a constitutional right to present a defense.
 
 Washington v. Texas,
 
 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967);
 
 State v. Tauzin, supra; State v. Hotoph, supra.
 

 La. C.E. art. 607(C) permits a party to attack the credibility of a witness by examining her concerning any matter having a reasonable tendency to disprove the truthfulness of her testimony. This grant is necessarily subject to the relevancy balance of La. C.E. art. 403 and to the limitation set forth in La. C.E. art. 608(B), generally precluding inquiry into particular acts, vices or courses of conduct to attack character for truthfulness. State
 
 v. Tauzin, supra.
 

 Considering the broad discretion granted to the trial court in these matters, we find no reversible error in the trial court’s granting of the state’s motion in limine which limited the cross-examination of Ti-cer regarding her alleged other acts of sexual abuse and precluded testimony of the other |2ivictims of the alleged crime. Evidence of Ticer’s lustful disposition was placed before the jury in her admissions both of the present offense and upon cross-examination by defense counsel, when she admitted to a separate allegation of abuse involving another child. The testimony of Ticer’s cellmate also established Ticer’s lustful disposition toward children.
 

 The trial court in this case did not prevent defendant’s right and ability to cross-examine Ticer concerning any bias and the charges against her. Instead, the trial court prohibited evidence through the testimony of other witnesses of a prior bad act of Ticer. Such evidence is unrelated to the crime with which the defendant is charged and prohibited as an attack on Ticer’s character under La. C.E. art. 608(B). The trial court also correctly ruled that La. C.E. art. 412.2 applies only to the accused and not a witness.
 

 
 *815
 
 IV.
 

 In his final assignment of error, Davis argues that the sentence on Count Two (indecent behavior with juveniles) was final upon original imposition and the trial court had no authority to amend it to make it consecutive to Count One (aggravated rape).
 

 The Supreme court has held that “the revesting of jurisdiction in the district court [is] no broader than the ‘sole’ question” for which the case was remanded.
 
 State v. Williams,
 
 05-1556 (La.2/17/06), 921 So.2d 105. Pursuant to his appeal in this death penalty case, Davis sought review only of the constitutionality of the death penalty for aggravated rape. The Supreme Court only set aside the death penalty (not the conviction) and remanded the case to the district court “for resen-tencing of the defendant tojjjife imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.” Thus, the trial court’s change of the sentence for indecent behavior with juveniles, making it consecutive to the sentence of the other conviction, appears outside the parameters of the remand order and the jurisdiction of the trial court.
 

 Moreover, when the defendant in a felony case has been sentenced to imprisonment at hard labor, there is no provision allowing an amendment of a legal sentence after its execution has begun. La. C. Cr. P. art. 881;
 
 State v. Sholar,
 
 35,047 (La.App.2d Cir.10/31/01), 801 So.2d 534. La. R.S. 15:566.2 provides that whenever a prisoner is sentenced to the state penitentiary (hard labor) and has not been released on bail or perfected a suspensive appeal, such a sentence shall be considered as commencing on the day following the day on which such prisoner is sentenced without regard to the actual date of incarceration in the state penitentiary. Article 881, interpreted with La. R.S. 15:566.2, allows a sentence which is not stayed, one day to be amended.
 
 State v. Sholar, supra; see also State v. Guajardo,
 
 428 So.2d 468 (La.1983). Here, Davis’s appeal to the Louisiana Supreme Court concerned only the aggravated rape conviction. No stay of the indecent behavior with juveniles conviction and sentence is evident from the record before us. Thus, the commencement of execution of this sentence began the day after the trial court remanded custody of Davis to the sheriff for transfer to the department of corrections on December 17, 2007. After this date, the trial court had no authority to amend Davis’s sentence Igjfor the indecent behavior with juveniles offense. Thus, we reinstate the original sentence to run concurrent with the life sentence.
 

 Decree
 

 For the foregoing reasons Davis’s convictions and aggravated rape sentence are affirmed. The original sentence for the indecent behavior with juveniles conviction is reinstated and affirmed.
 

 CONVICTIONS AND AGGRAVATED RAPE SENTENCE AFFIRMED; ORIGINAL INDECENT BEHAVIOR WITH JUVENILES SENTENCE REINSTATED AND AFFIRMED.
 

 [1]
 

 . Louisiana's death penalty was held unconstitutional for aggravated rape of a child under 13 years of age in
 
 Kennedy
 
 v.
 
 Louisiana,
 
 - U.S. -, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008).
 

 [2]
 

 . Melissa Ticer, Davis's girlfriend, was also indicted for the aggravated rape of K.F.
 

 [3]
 

 . Both sides stipulated that if called to the stand, A.D. would not recall the events and the court ruled that he was unavailable to testify.
 

 [4]
 

 . Certified copies of the minutes of Davis's 1998 guilty plea to the crime of promotion of prostitution were submitted into evidence. Lieutenant Mike Smith of the Bossier Parish Sheriff’s Office testified regarding the arrest and investigation of Davis for the offense.
 

 [5]
 

 . The slate did not introduce the computer or computer disk into evidence.