STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-372

STATE OF LOUISIANA

VERSUS

MAURICIO GARCIA CUMBRERA

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 40405-11
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Billy Howard Ezell, and J. David Painter, Judges.

AFFIRMED.

John Foster DeRosier
District Attorney
14th Judicial District Court
P. O. Box 3206
Lake Charles, LA 70602-3206
(337) 437-3400
COUNSEL FOR PLAINTIFF/APPELLEE:
     State of Louisiana

**Annette Fuller Roach**
**Louisiana Appellate Project**
**P. O. Box 1747**
**Lake Charles, LA 70602-1747**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Mauricio Garcia Cumbrera**

**Carla Sue Sigler**
**Assistant District Attorney**
**Karen C. McLellan**
**Assistant District Attorney**
**P. O. Box 3206**
**Lake Charles, LA 70602**
**(337) 437-3400**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **State of Louisiana**

**SAUNDERS, Judge.**

On December 1, 2001, the State filed a bill of information charging Defendant, Mauricio Garcia Cumbrera, with two counts of first degree murder, in violation of La.R.S. 14:30. On September 3, 2013, the bill was amended to charge two counts of second degree murder, in violation of La.R.S. 14:30.1; on the same date, jury selection began. Jury selection was completed the next day.

The jury began hearing evidence on September 5, 2013; said jury found Defendant guilty as charged the next day. Defendant waived sentencing delays, and the court sentenced him to life imprisonment on each charge.

Defendant now appeals his convictions. In his appeal, he assigns three errors.

## FACTS:

On September 4, 2011, Anna Cumbrera and Julia Landry, Defendant's wife and stepdaughter, respectively, traveled from Sulphur to Texas to attend a baptism. Defendant spent the day at the apartment of Jessica Landry, another stepdaughter, with her children and boyfriend while she was at work. When she returned home in the mid-afternoon, Defendant was arguing with Mrs. Cumbrera on the telephone. The basis of the argument was whether one or more of Jessica's children would be able to go home with Defendant.[1]

Some long-standing domestic issues also arose, and Defendant became agitated. Jessica tried to calm him, but Defendant replied in broken English, "No, I make a crazy," and left soon thereafter.

When Defendant returned to his residence, Mrs. Cumbrera stood in the back door holding a machete and advised him not to come in. He walked to his tool

---

[1]There was conflicting testimony regarding whether it was Defendant or Mrs. Cumbrera and Julia who did not want Jessica's children to go to the Cumbrera home.

area where he had a gun.  He returned to the door and shot Mrs. Cumbrera twice.

Julia was in the living room, and he shot her, too.  Julia was still standing, so he

shot her again.  She left through the front door and ultimately fell in the driveway.

Medical evidence showed he shot her a total of three times.

Defendant drove away, apparently hitting Julia initially in some manner.[2]

Thereafter, he called authorities and surrendered behind a grocery store in Lake

Charles.

**ERRORS PATENT:**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by

this court for errors patent on the face of the record.  After reviewing the record,

we find that there are no errors patent.

**ASSIGNMENT OF ERROR NUMBER ONE:**

We observe that Defendant does not contest that he killed the two victims.

Rather, in his first assignment of error, he argues that there was sufficient evidence

in the record to show he killed them in sudden passion or "heat of blood" caused

by immediate provocation which would have deprived an average man of his self-

control.  The bulk of this language comes from the manslaughter statute, La.R.S.

14:31, which states in pertinent part:

> A. Manslaughter is:
>
> (1) A homicide which would be murder under either Article 30
> (first degree murder) or Article 30.1 (second degree murder), but the
> offense is committed in sudden passion or heat of blood immediately
> caused by provocation sufficient to deprive an average person of his
> self-control and cool reflection.  Provocation shall not reduce a
> homicide to manslaughter if the jury finds that the offender's blood
> had actually cooled, or that an average person's blood would have
> cooled, at the time the offense was committed[.]

---

[2]Although some testimony suggested Defendant had backed over Julia in the driveway,
medical evidence from the State's own witness indicated she was not run over.

2

The test for sufficiency of trial evidence is well-settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the Jackson standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Defendant argues that the trial evidence shows events took place that "were sufficient to deprive anyone of his self-control and cool reflection." While the situation surrounding the offense was undoubtedly emotional, the jurisprudence indicates that some sort of immediacy must be involved in order for emotions to mitigate murder to manslaughter:

> Regardless of the words exchanged, "mere words or gestures, however offensive or insulting, will not reduce homicide from murder to manslaughter." *State v. Massey*, 535 So.2d 1135, 1143 (La.App. 2 Cir.1988). *See also State v. Mitchell*, 39,202 (La.App. 2 Cir. 12/15/04), 889 So.2d 1257, *writ denied*, 05-132 (La.4/29/05), 901 So.2d 1063, quoting *State v. Conerly*, 48 La.Ann. 1561, 21 So. 192 (1897)). "Further, an argument alone will not be a sufficient provocation in order to reduce a murder charge to manslaughter. *State v. Miller*, 98-642 (La.App. 3 Cir. 10/28/98); 720 So.2d 829, citing *State v. Gauthier*, 546 So.2d 652 (La.App. 4 Cir.1989)." *State v. Charles*, 00-1611, p. 4 (La.App. 3 Cir. 5/9/01), 787 So.2d 516, 519, *writ denied*, 01-1554 (La.4/19/02), 813 So.2d 420.

> In reviewing the Defendant's claim, this court must determine "if a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the mitigating factors were not established by a preponderance of the evidence." *State v. Hamilton*, 99-523, p. 7 (La.App. 3 Cir. 11/3/99), 747 So.2d 164, 168.

. . . .

In *State v. McCray*, 621 So.2d 94 (La.App. 2 Cir.1993), the defendant went to the victim's home armed with a pistol. He went into one of the bedrooms and left his gun there, but kept the clip. The defendant then returned to the living room and began talking to the victim about their relationship. When the victim told the defendant she did not love him anymore, he hit her in the head several times with the clip. The defendant then went to the bedroom, retrieved the gun, and inserted the clip. The defendant returned to the living room and hit the victim over the head with the gun several times saying, "Well, I tell you what, b--ch, if I can't have you, can't nobody have you." *Id*. at 96. The defendant then aimed the gun at the victim and fired. The victim's brother grabbed the defendant's hand, causing the bullet to go through the ceiling. The defendant fired a second time, and the bullet struck the victim in the abdomen. The defendant was convicted of attempted second degree murder. On appeal, the defendant argued that the evidence supported a verdict of attempted manslaughter. The court found that the defendant had ample time to reflect on his actions because he went into another room of the house to retrieve his gun.

In the present case, we find the verdict of guilty of second degree murder should stand. The stabbing occurred at least ten to fifteen minutes after Jerry threw a cup at and/or hit the Defendant. Based on the cases cited herein, Jerry's acts were too far removed from the stabbing to support the provocation element necessary for a conviction of manslaughter. Subsequently, Jerry and the Defendant were arguing; however, an argument alone is not sufficient provocation to support a verdict of manslaughter. Additionally, the Defendant left the area of the living room and went into the kitchen to retrieve the knives she used to stab Jerry. Based on these facts, we find the Defendant failed to establish the mitigating factors necessary to support a verdict of manslaughter by a preponderance of the evidence. Additionally, based on the cases cited herein, any arguments or physical abuse that occurred prior to the date of the incident, would not be sufficient provocation for manslaughter.

*State v. Johnson*, 06-623, pp. 8-11 (La.App. 3 Cir. 11/2/06), 941 So.2d 696, 702-04, *writ denied*, 06-3024 (La. 9/14/07), 963 So.2d 995. This court has also observed:

In reviewing the claim, this court must determine if a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the mitigating factors were not established by a preponderance of the evidence. *State v. Huls*, 95-0541 (La.App. 1 Cir. 5/29/96); 676 So.2d 160, *writ denied*, 96-1734 (La.1/6/97); 685 So.2d 126.

4

In an effort to establish that he shot his estranged wife and Deputy McIntosh in sudden passion or heat of blood, the defense emphasized that the Defendant found his wife, partially naked, having just engaged in sexual intercourse with her nineteen-year-old boyfriend. According to the Defendant, this was the provocation for the shootings and his actions after the shootings.

. . . .

Neither the Defendant seeing his estranged wife with a boyfriend, [*State v.*] *Sanders*, [93-01] 648 So.2d 1272, [*cert. denied*, 517 U.S. 1246 116 S.Ct. 2504(1996)], nor disputes between spouses over their impending divorce or over-due money payments, *Huls*, 676 So.2d 160, are sufficient provocation to reduce first degree murder to manslaughter.

*State v. Hamilton*, 99-523, pp. 7-9 (La.App. 3 Cir. 11/3/99), 747 So.2d 164, 168-69.

Defendant, in his statement to police, claimed that his wife armed herself with a machete; however, he also stated that her possession of the machete neither scared nor angered him. Thus, the machete forms no basis for mitigation. The trial evidence demonstrated that an emotional domestic situation took place but not sufficient provocation to justify reduction of the convictions to manslaughter. Also, Defendant's statement to police showed that he left the trailer to retrieve the murder weapon, which was wrapped in a bag and hidden in his tool area outside. Thereafter, he returned to shoot the victims after having checked the weapon before firing. Thus, there was some time delay and thought process involved, not an immediate flash of rage. Accordingly, we find that this assignment lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO:

In his second assignment of error, Defendant argues that the trial court erred by giving an instruction that did not include the preponderance of the evidence standard applicable to mitigating factors needed to reduce murder to manslaughter, as mentioned in the previous assignment. However, the actual assignment of error rests on an argument that counsel was ineffective for failing to object to the jury

5

instruction. Defendant notes the correct test for such a claim has two steps, pursuant to *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984): (1) it must be demonstrated that trial counsel's performance was deficient; and (2) said deficiency must have prejudiced Defendant. *State v. Washington*, 491 So.2d 1337 (La.1986).

However, Defendant acknowledges that a faulty jury instruction regarding manslaughter may be harmless.[3] Further, his argument on appeal rests on his assertion that the trial evidence showed provocation sufficient to deprive an average person of self-control. This argument was refuted in the analysis of the previous assignment. The trial evidence did not demonstrate by a preponderance of the evidence that such mitigation existed. Thus, Defendant failed to meet the second prong of the *Strickland* test, and the assignment lacks merit.

## ASSIGNMENT OF ERROR NUMBER THREE:

In his final assignment of error, Defendant argues that the trial court erred by permitting Jessica Landry to testify regarding the meaning of a statement Defendant made before the offense. We disagree.

As mentioned earlier, on the date of the offense, Defendant spent the day at Jessica's residence with her boyfriend while she was at work. After she got home, she heard Defendant arguing on the telephone with Anna Cumbrera. Jessica tried to get him to calm down, but he said, "No, I make a crazy." The State asked Jessica what that meant, and she opined, "He's going to do something bad." Defendant objected to the opinion testimony, but the trial court allowed it, based upon La.Code Evid. art. 701, which states:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:

---

[3]Defendant cites *State v. Fuentes*, 13-957 (La.App. 1 Cir. 2/18/14) (unpublished opinion).

6

> (1) Rationally based on the perception of the witness; and
>
> (2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.

The second circuit has explained:

> In his second assigned error, Davis argues that K.F.'s mother was erroneously allowed to state that in her opinion Davis was the "architect of what was done." Davis asserts that this was inadmissible opinion evidence that was not based on personal knowledge of the facts and which was "unfairly prejudicial."
>
> . . . .
>
> A reviewing court must ask two pertinent questions to determine whether the trial court properly allowed lay opinion testimony: (1) was the testimony speculative opinion evidence or simply a recitation of or inferences from facts based upon the witness's observations; and (2) if erroneously admitted, was the testimony so prejudicial to the defense as to constitute reversible error. *State v. LeBlanc*, 05-0885 (La.App. 1st Cir.2/10/06), 928 So.2d 599.
>
> As a general rule, a lay witness is permitted to draw reasonable inferences from his or her personal observations. If the testimony constitutes a natural inference from what was observed, no prohibition against it as the opinion of a non-expert exists as long as the lay witness states the observed facts as well. *State v. Casey*, 99-0023 (La.1/26/00), 775 So.2d 1022, 1033, *cert. denied*, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
>
> On direct examination by the state, the mother of K.F. testified that she first met Davis in 2000 after which she and Davis became friends. During a period of time in 2005 when K.F.'s mother and father were having marital difficulties, her mother allowed other people to watch her children. She testified that those people included Davis and Ticer, with whom her children often stayed. In early 2005, K.F. told her what Davis and Ticer had done. On cross-examination, the defense sought to elicit testimony to show that Davis's codefendant, Melissa Ticer, was the main actor in the crime.
>
> . . . .

At that point, defense counsel lodged an objection to K.F.'s answer. Before the court was able to overrule the objection, the witness named Davis in answer to the state's question. It is this exchange which is the subject of the assignment of error.

From K.F.'s testimony, she primarily reported the facts of Davis's involvement with her daughter and his opportunity to commit the crime. She also reported the initial revelation of the crime by her daughter and was obviously aware of the details of Davis's actions which K.F. testified to at trial. Her view regarding Davis's role as the architect of the assaults upon her child was drawn from the reasonable and natural inferences from the facts. To the extent that her conclusion elevated Davis's role in the matter above that of Ticer's, we find that conclusion as a harmless expression of her opinion since both parties were shown to have been involved in the crime. This assignment of error is without merit.

*State v. Davis*, 44,656, pp. 15-17 (La.App. 2 Cir. 11/18/09), 26 So.3d 802, 811-12, *writ denied*, 09-2768 (La. 6/25/10), 38 So.3d 355, *cert. denied*, __ U.S. __, 131 S.Ct. 922 (2011).

In the present case, Jessica testified that she had heard Defendant use the phrase before, so she knew what he meant. In light of *Davis*, we find that Jessica's testimony was permissible. Given that she had heard Defendant use the phrase before, her testimony is a logical inference based upon her observations.

Further, even if this court were to determine that the testimony was improperly admitted, it was harmless. As Defendant observes, such testimony could be read as suggesting the formation of intent before he returned to his residence. However, it can also be viewed as merely showing that Defendant was stressed and angry about the argument with his wife. Whatever "something bad" meant when Jessica heard Defendant say it previously, it did not mean he was going to kill somebody. As Defendant points out, the statement did not lead Jessica to take any action. Additionally, as discussed in the first assignment of error, the situation surrounding the offense was not mitigating to the extent that Defendant's second degree murder convictions should have been reduced to manslaughter. For the reasons discussed, this assignment lacks merit.

## DECREE:

Defendant's convictions are affirmed.

**AFFIRMED.**