DREW, J.
| plaintiffs, Anthony Zeno, Vanessa Zeno, and Mone’t C. Zeno, appeal from- a summary judgment that dismissed their tort action. We affirm.
FACTS .
The incident that led to this lawsuit happened in Ohio in the summer of 2011. A group of nearly 50 recent high school graduates affiliated with First Baptist Bossier chartered a tour bus owned by Great Southern Coaches of Arkansas, Inc. (“Great Southern”), and operated by driver Joseph -Guidry, At about 11 a.m. on June 3, 2011, the bus was southbound on Interstate 75 when a metal object hit the bus windshield. The object pierced the windshield, narrowly missing Mr. Guidry, and flew through the interior of the bus *601 until it struck Mone’t Zeno in the face, seriously injuring her.[1]
On June i, 2012, the Zenos filed suit in the First Judicial District Court against Great Southern, Guidry, and their insurer, New Hampshire Insurance Company (“NHIC”).[2] After over two years of discovery that included the depositions of numerous witnesses, defendants Great Southern, Guidry, and NHIC filed a motion for summary judgment, urging that plaintiffs could not prove that the movers had any fault in causing the incident.
The motion was supported by 19 exhibits, including:
• A police report from Ohio State Highway Patrol Trooper Timothy Wenger. Trooper Wenger responded to the accident and created the lengthy report, which included a diagram of the accident and a list of the bus passengers,
(>• An affidavit from Trooper Wenger, stating that he had been trained and certified in crash investigation and that, in his opinion, the accident was not the fault of the bus driver.
• Brief excerpts[3] from the depositions of 15 witnesses who were passengers on the bus, including the plaintiff.
From these excerpts, we learn:
• Ms. Ashley Doucet said that the hole in the bus windshield was “six to eight inches above [the driver’s] head”; Valerie Ashby said the hole was about a foot over Guidry’s head,
• Ashby said that she didn’t- notice Guidry driving “fast or slow,” and agreed that it appeared that Guidry was driving “at -a normal rate of speed.”
• Dana Howard described the accident: -
We were driving along just, you know, traveling, using phones dr watching a movie. I’m not sure what was happening right at the same time. All' of a sudden, Mr. Joe said, “Oh,' that—I think a bird must have hit us or something;” He very calmly pulled the bus over to the—-the road. After we saw what had happened, we were just very thankful that he kept a calm head and took care of us because it could have been really bad.
Ms. Howard also said that the bus was “not'really” noisy and was “never really a rowdy bus like middle school.”
• Passenger/chaperone Wendy Walker, who had been a school bus driver for 14 years, said that Guidry handled the situation “better than I probably ever would have done in my life. I probably would have panicked.”
• Passenger/chaperone Paul Reiser was at the front of the .bus when the incident happened. Reiser said:
I got up, front. I’m sitting on the steps putting in the—changing out the DVD. I see the little shadow come over, so I duck my head. You hear the burst. You feel the glass and stuff fall on your head. So I immediately looked *602 up, looked over to Mr. Joe and he was like—he |awas very impressive. I mean, he was totally calm. I saw him—everything kind of went into slow motion at that point. ... So I saw him like—he was looking at the— he was looking at his side mirrors, he was—you know, just had total control of the vehicle, you know, immediately began slowing down the vehicle and he was checking his side and he pulled over to the side of the road, pulled over to the shoulder. I expected to hear screaming. I expected to stand up and turn around and see, you know, just catastrophe, but actually, it was just really quiet. And so I turned around and saw just a bunch of quiet, scared kids and nothing seemed to be happening. So I’m like, “we made it.” And then someone ran to the front of the bus and said ‘call 911,” you know, so I called 911.
• Josh Ashby said, “I think [Guidry] did a great job of—when it happened, so—I mean, he pulled over. He didn’t lose control. He didn’t panic.”
• Kara Forbis, Kristina Rowe, and Robert Stephenson said that there was never a time prior to the accident that they felt unsafe on the bus.
• Stephenson said that their bus was traveling in the outside lane, and that he “vaguely remember[ed]” a “larger 18-wheeler of some type going past us[J”
• Mone’t Zeno said that there was never a time prior to the accident when she didn’t feel safe and that she was sitting three rows from the back seat on the aisle when she was hit by the object.
Plaintiffs opposed the motion for summary judgment, arguing that Guidry “violated multiple safety rules” and alleged that Guidry failed to maintain a proper lookout, allowed himself to be distracted, and drove in the left lane even though he was not passing anyone. Plaintiffs argued that two persons—Paul Reiser and Ashley Doucet—saw the piece of metal before it struck the bus. Reiser said:
I see—like I say, I’m, you know, right up front, so you see a little shadow come over like just kind of the corner of my eye and I felt like it was like a bird or something. It felt like it was about to hit the bus because I just see a shadow and I duck my head and you hear this shotgun sound, you know, when the Robject hit the bus. An object hit the bus through the windshield, made a really loud sound[.]
Doucet said:
We were told [the metal object] was bouncing in the road and possibly came from an 18-wheeler.
Plaintiffs also pointed out some of Mr. Guidry’s deposition testimony:
Q: If someone testified that piece of metal had been bouncing down the interstate before it hit the windshield, would you disagree with that?
A: Yes.
Q: You would dispute that particular fact?
A: Yes.
Q: All right. And if someone said that they were able to see it prior to the piece of metal entering the bus, would you have any reason to disagree with that statement?
A: Yes.
Q: If someone had time to see the piece of metal and duck, would that have been a different experience than what you had?
A: Pretty much, man. Like I said, I don’t want to be caught against the wall on this because it happened so fast. So I don’t know. I mean, nobody seen nothing. If they did, they got good eyes. *603 Ain’t nobody seen nothing. If I didn’t see it, I know they didn’t [see] it. They all asleep, man.
The plaintiffs also argued that Mr. Reiser was forward of the white painted line separating the driver’s area from the passenger cabin, and that the bus driver admitted that anyone who was forward of the white line could become a distraction to the driver. Finally, plaintiffs alleged that the bus was in the passing/left lane at the time of the incident, that Guidry failed to report that fact to the investigating officer, and that Guidry only revealed this fact at his deposition five years after the accident, where he claimed he was passing a slower car.
|fiIn addition to their opposition, plaintiffs filed a motion to strike certain material from the exhibits to the defendants’ motion for summary judgment:
• The traffic report prepared by the Ohio State Trooper;
• 14 of the 15 deposition excerpts (excluding Mone’t’s deposition); and
• The affidavit of the Ohio State Trooper.
Plaintiffs argued that the trooper’s report was hearsay, that his affidavit was incompetent because he was not an expert witness, and that the deposition excerpts contained largely irrelevant material that lacked a proper foundation.
The defendants opposed the motion to strike and filed a reply to the plaintiffs’ opposition to summary judgment, attaching additional deposition excerpts and urging that plaintiffs had no evidence of fault on the part of the defendants.
Regarding the motion to strike, the trial court:
• Granted the motion to strike the trooper’s report except as it showed that Guidry made a statement to the trooper because that was relevant to the plaintiffs’ allegation that Guidry did not say that he was traveling in the left lane.[4]
• Allowed the trooper’s affidavit to be used as evidence but said, “I will determine what, how it’s to be applied as far as the standard on summary judgment^]”
• Denied the motion to strike the witnesses’ deposition excerpts attached to the original motion but granted the motion to strike the material attached to the defendants’ reply memo.
10After considering all of the evidence in favor of and opposed to summary judgment, the trial court concluded that the plaintiffs could not prove any fault on the part of Mr. Guidry:
When I was reading through all of these exhibits and listening to the argument, the only question I had in my mind was whether or not Mr. Guidry was distracted. Of course, he’s held to the duty of ordinary care. I think everybody is in agreement with that. Okay. Even if someone was beyond the white line, that I’ve heard a lot of talk about, and sitting on the steps or standing, the question still is was he distracted? Someone could be beyond the white line, but that doesn’t equate to automatic distraction. I heard—read no deposition testimony and saw no affidavits indicating that Mr. Guidry was distracted in any way whatsoever. Everyone actually complimented his handling of the situation. No one talked about what happened immediately before the impact except, of course, Mr. Guidry himself.
There was one individual, Mr. Reiser, I believe was his name, testified that im *604 mediately before the impact he saw a shadow. Well, driving down the highway you see shadows all the time. There are many times I personally have been driving down the highway and rocks hit my windshield, one time scared me half to death, a bird hit my windshield which I did not see coming. So, I don’t think that he was distracted whatsoever because I’ve seen no deposition testimony or affidavit to that effect. Simply by someone being beyond the white line and seated on the step does not equate to automatic distraction or possible distraction when there’s nothing to support it.
I do believe, based upon all of the deposition attachments that I read, that this was totally an unavoidable accident, and there’s been nothing presented to the contrary that would present a question of fact; therefore, the motion of summary judgment is granted.
Plaintiffs now appeal.
DISCUSSION

Assignment of Error 1, The trial court committed legal error by denying plaintiffs’ Motion to Strike Exhibit 1 in its entirety and admitting the Traffic Crash Report.

Assignment of Error 2. The trial court committed legal error by denying plaintiffs’ Motion to Strike Exhibits 3-10 and Exhibits 12-17 in their entirety and admitting the depositions.

ItAssignment of Error 3. The trial court committed legal error by denying plaintiffs’ Motion to Strike Exhibit 11 in its entirety and admitting the. affidavit of Timothy Wenger,

Assignment of Error 5. The trial court committed legal error by granting summary judgment when inadmissible evidence was weighed and considered.

The plaintiffs first argue that the court erred by considering (1) the partial police report, (2) the trooper’s affidavit, and (3) the depositions of the witnesses other than the plaintiff. They urge that the police report is hearsay in its entirety, and that defendants have no testimony to authenticate the statements therein. They further argue that the trooper’s affidavit amounts to expert testimony and that the trooper cannot be shown to be an expert accident reconstructionist, so his opinion must be excluded. Finally, they argue that the 14 objected-to depositions contained irrelevant material, lacked a proper foundation, and did not tend to show that Guidry was free from fault. They also argue that the material submitted with the defendants’ reply memo should not have been considered.
We first observe that the trial court complied with La. C.C.P. art. 966(D)(2) in handling the plaintiffs’ objections to the material submitted by the defendants in support of summary judgment. The court considered the plaintiffs’ objections in a timely manner and specifically stated on the record the documents that it would and would not consider in conjunction with the motion.
We find no error in the trial court’s evidentiary decisions. The court properly excluded the lengthy police report as hearsay, but acted within its discretion to consider the brief portion of the report where Mr. Guidry told the trooper the lane in which the bus was traveling. That portion of the report was relevant and admissible to rebut the plaintiffs’ contention that Mr. | sGuidry somehow concealed that information from the authorities and the parties, and in fact the trial court did not indicate that it relied upon this information for the truth of the matter asserted. Next, the trial court acted within its discretion to consider the trooper’s affidavit. La. C.C.P. art. 967(A) provides, in part:
*605 Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. The supporting and opposing affidavits of experts may set forth such experts opinions on the facts as would be admis- . sible in evidence under Louisiana Code of Evidence 702, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.
The trooper’s affidavit, although it refers to his training and qualifications in technical crash investigation, arguably contains insufficient proof of his competence to testify about the question of Guidry’s fault-. Nevertheless, the document can be relied on as some evidence of the scope of the investigation into the crash and the relevant facts directly observed by the trooper (e.g., the location of the bus and passengers after the incident, .the events that occurred during this time, and the condition of the victim).
Further, it does not appear from the trial court’s reasons for ruling that the court gave any weight to the trooper's opinion; instead, the trial court relied upon the accounts provided by the witnesses who were actually on the bus. Any error in the trial court’s decision regarding this affidavit was de minimis.
The plaintiffs also complain that the extremely brief excerpts from the witnesses’ depositions should not have been considered by the trial court because, essentially, they were irrelevant, lacked foundation and did not tend to support the defendants’ contention that they were without fault.
|nLa. C.C.P. art. -966(A)(4) provides, in part:
The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda; affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions.
Depositions, or excerpts thereof, are among the most common exhibits in summary judgment practice, and the question of their relevance primarily goes to the merits of the motion or opposition, not their admissibility in conjunction with the motion or opposition. Whether the’ excerpts prove—-or do not prove—the assertions of their proponent is ultimately answered by the grant or denial of summary judgment. As for the foundation for these documents in this case, these deponents were all passengers on the bus at the time of this incident and that is sufficient foundation under these facts to support their consideration.
Again, the record does not reflect that the trial court gave any weight.whatsoever to the trooper’s opinion about Mr. Guidry’s fault or to any otherwise inadmissible matters.,, The trial court specifically stated that it was relying on the depositions supplied in conjunction with this matter and based its ruling on the admissible- material. We find no reversible error in these assignments.

Assignment of Error 4. The trial court committed legal error by granting summary judgment when material facts were in dispute.

Plaintiffs urge that this case is not appropriate for summary judgment because it involves determinations of negligence and-comparative fault, and that the driver’s alleged violation of company policy and various safety rules was effectively an admission of fault.
ImThe law on summary judgment is *606 well settled.[5] We review these decisions de novo using the same criteria used by a trial court. Applying those criteria, we agree with the trial court that the defendants were entitled to be released on summary judgment.
In their motion for summary judgment, the defendants effectively pointed out that the plaintiffs had no proof of negligence on the part of Mr. Guidry or his employer. Apart from Mr. Guidry, apparently the best view of the road ahead was that of Mr. Reiser, whose testimony has already been quoted; he saw a “little shadow over” the corner of his eye just before impact.
Ms. Doucet reported that other people had told her that the object “was bouncing in the road and possibly came from an 18-wheeler,” but she did not see the object before it hit the bus, and the record does not reflect that any other person saw the object bouncing on the road before it hit the bus. Guidry did not see the object on the road or in any other location before it hit the bus. There is simply no evidence in the record to suggest that Guidry should have seen the piece of metal before it hit the bus, and in ^particular, there is no evidence to suggest that the driver could have taken any action to avoid the object before it hit the bus.
Likewise, we find plaintiffs’ arguments about alleged policy violations and fault to be unpersuasive. As did the trial court, we detect nothing in the depositions to show that Guidry was distracted in the moments before this incident. Mr. Reiser admitted he was in the front of the bus, and perhaps across the line dividing the passenger cabin from the driver’s area,[6] but Reiser did not suggest that he was talking to, interacting with, or otherwise distracting Gui-dry at the moment the object hit the bus. Guidry denied that he was distracted at the moment of impact, and there is no evidence to prove otherwise. Further, the lane of travel of the bus is immaterial; Guidry explained that he was in the left or passing lane at the time, going 62 miles per hour, as he was passing a car. He explained that he was looking ahead during this maneuver, but also:
But—but, see, you can’t just look ahead of you and drive. You’ve got to look in the mirrors and see what’s beside you and one trying to change lanes and all, you’ve got to be active[.]
Guidry said that he was actively surveying the perimeter of the bus prior to impact.
CONCLUSION
In short, this record does not contain any evidence to suggest that Guidry bore *607 any fault whatsoever for this incident. As the trial court put it, the evidence shows that the event, despite its tragic consequence, was simply unavoidable. Accordingly, we affirm the judgment of the district court |iagranting summary judgment in favor of Guidry, Great Southern, and NHIC. Costs of this appeal are assessed to plaintiffs.
AFFIRMED.

. In brief, plaintiffs state that Mone’t has undergone multiple surgeries to reconstruct her crushed face and has incurred hundreds of thousands of dollars in medical expenses.

. Other insurers were named as defendants but were not pursued.

. Based upon argument at the hearing on the motion for summary judgment, certain pages from these excerpts may not have made it into the appellate record even though, as defendants assert, the pages were attached to the defendants’ original motion. This Court is a court of record and will consider only that material that comprises a part of the appellate record. La. C.C.P. art. 2164; Denoux v. Vessel Mgmt. Servs., Inc., 2007-2143 (La. 5/21/08), 983 So.2d 84.

. The section of the report containing the trooper’s questions and Guidry's answers reflects that Guidry told the trooper that he was driving the bus in the left lane at the time of the incident.

. Summary judgment procedure is found in La. C.C.P. art. 966, which states that a motion for summary judgment shall be rendered forthwith "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with'the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P, art. 966(B). The burden of proof remains with the movant. La. C.C.P. art. 966(C)(2). However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. Summary judgments are subject to a de novo review using the same criteria as the trial court to determine whether summary judgment is appropriate. Arceneaux v. Amstar Corp., 2015-0588 (La. 9/7/16), 200 So.3d 277.

. Guidry said that no one was across the line at this time.