PITMAN, J.
*1151 Plaintiff Kelly Farrar appeals the judgment of the trial court granting a motion for summary judgment filed by Defendant CenterPoint Energy Resources Corp., d/b/a/ CenterPoint Energy Arkla, and dismissing the suit. For the following reasons, we affirm.
FACTS
Plaintiff sued Defendant, which provided gas service to his home in Minden, Louisiana, alleging that, without his permission, Defendant installed an "Encoder Receiver Transmitter" device ("ERT") on the gas meter at his home. The ERT replaced the analog meter with index dials that had previously measured his utility usage for purposes of reading the meter, but the ERT was still attached to the analog meter with dials. He alleged that this ERT contains a radio transmitter, a radio receiver and a digital encoding and electronic storage device and is electronically programmable. He also alleged that the device not only allows Defendant to monitor gas consumption for billing purposes, but also allows it to "collect precise and detailed measurements about customers' activities within their homes, to collect and store that data, and to communicate data to and from customers' meters." He further alleged that this ability to collect, store and communicate data has resulted in an unreasonable invasion of his privacy in his home because the data collected renders precise information about the details of activities within his home, such as the number of people within the house at any given time; their likely ages, gender and activity level; when they are home; when they wash dishes and clothes and bathe; and when they cook meals. He claimed that this expansive collection of unnecessary data exceeds that necessary for billing purposes and, in fact, is data for which there is a growing market and which Defendant can now sell.
Plaintiff also alleged that the ERT was installed without his permission and that when he discovered his gas usage was being monitored through the device, he demanded that Defendant remove it from his meter. Defendant conditioned the continuation of service upon the acceptance of the ERT, and when he refused, Defendant removed the ERT and discontinued his gas service. Plaintiff claimed he had a constitutional right to privacy under La. Const. art. 1, § 5, against both governmental and private intrusions and noted that the unreasonable invasion of privacy is a tort actionable under La. C.C. art. 2315. He further alleged he was monetarily damaged by termination of gas utility services and that he had to incur the cost of converting to alternative energy sources and purchasing appliances that could be operated by an alternate energy source. He sought monetary damage for injuries resulting from Defendant's invasion of his privacy and the consequent loss of utility services.
Defendant filed a motion for summary judgment, claiming that the ERT allows it to obtain readings of gas usage remotely; thus, it is cost efficient and helps the company keep its rates low. It pointed out that Plaintiff objected to the ERT attached to his meter because he believed it to be an electronic surveillance device that allowed it to know precise details concerning the use of gas in the home and details of activities and persons in the home. When Plaintiff objected to the ERT being located on his meter, it was removed six months after installation, at which time he used gas for heating his home only through central heating and a gas water heater.
Defendant claimed Plaintiff has asserted three ways his privacy was invaded by the ERT: (1) The ERT was installed for *1152 purposes of obtaining more information than necessary for billing purposes, which gathering of excessive data was a violation of his right to privacy; (2) Defendant failed to provide any protection against third-party interception of the ERT's transmissions of the excessive data; and, (3) Defendant installed the ERT without his knowledge or consent and without a right to enter his property to install the electronic surveillance device.
Defendant claimed it had an obligation to provide Plaintiff with a meter at his residence that would allow him to see the meter dial and ascertain how much gas was being consumed. It argued that the ERT was installed on the existing meter and did not affect the meter dials or Plaintiff's ability to see them and ascertain how much gas was being consumed. It alleged that it had the authority to install the ERT per the "Standard Gas Tariff" ("the Tariff") filed with the Louisiana Public Service Commission, which provides that it has the right to enter the premises of customers at reasonable hours to change or remove equipment it owns. It asserted that the ERT is not a surveillance device and Plaintiff cannot prove that it gathered more information about him than was necessary for the provision of natural gas and the billing for that service or that it had not provided protection against third-party interception of the ERT's transmissions. Last, it alleged that Plaintiff cannot prove that data about his gas usage was shared with, or sold to, any third party; thus, he has failed to state a viable action for invasion of privacy.
In support of its motion for summary judgment, Defendant filed the affidavit of Bobby R. Burns, its regional operations director; a copy of the Tariff; letters written to it by Plaintiff detailing all the conflicts he had with its employees and his reason for demanding the removal of the ERT; the affidavit of Charles Engelken, its manager of meter reading; the affidavit of Mary James, its IT director in Houston, Texas; and Plaintiff's deposition.
Burns's affidavit states he is Defendant's regional operations director and has been employed for 40 years. He stated that Defendant's operations are governed by the Tariff and that it contains the terms and conditions of service between it and its customers. He stated that the Tariff allows Defendant or its contractors, agents or employees to enter a customer's premises at reasonable hours to repair, replace or modify Defendant's equipment and notes that a copy of the relevant portion of the Tariff is attached to his affidavit. He stated that nothing in the Tariff requires particular metering or measuring devices or regulates the frequency with which Defendant may collect or store data measuring gas usage by a customer. Plaintiff was a customer beginning in August 2003, and the ERT was installed at his residence on September 7, 2014. Plaintiff made repeated requests for the ERT to be removed; and, after he was informed that he would no longer be able to receive gas service to his house if the ERT was removed, he elected to have it removed anyway. The ERT was removed and gas service to his house ended on March 2, 2015.
The affidavit of Engelken stated that the ERTs were installed to accelerate the meter readers' ability to read the meters and thereby reduce that cost. The cost went from $ 1 per meter to $ 0.10 per meter after the ERTs were installed. He stated that the ERT works with the wheel on the meter, counting each revolution of the wheel in order to determine the amount of gas passing through the meter and that the dials of the meter function the same way and remain operational after the ERT is installed. He further stated that the ERT stores the data it collects for 40 days. Starting with the 41st day after the installation of the ERT, the oldest data is replaced *1153 by the newest data. Thereafter, as each new day's data is added, the oldest data is replaced. The ERT is only capable of transmitting data. It cannot receive data from remote sources. Once a month, when Defendant's utility vehicle passes by, the ERT is awakened by a signal sent from the vehicle. It transmits data to the vehicle consisting of the meter number, ERT module number and the reading of the gas meter. Transmissions are made over a 900 mhz FM frequency. Only the reading of the gas meter is transmitted, not the stored data. He stated that when the data is received by the meter reader, special software and equipment is used to translate the data into usable information for billing purposes. The software used to translate the data is proprietary and confidential. Prior to and after installation of the ERTs, the only information gathered from individual meters is the volume of gas that passed through the meter between readings. There has been no change in the information that is obtained from the meter reading, just in the way the meter is read.
The affidavit of James states that she is responsible for maintaining the SAP software licensed and used by Defendant for billing purposes and ensuring that it is used in accordance with its policies. She stated that the SAP software used for billing applies the data gathered from meter reads to customer account data in order to generate monthly bills. The data gathered from meter reads includes the meter number, ERT number and the volume of gas that passed through the meter since the last time it was read. Customer account data includes, but is not limited to, the customer's name, address, account number and billing history. All of the data gathered from meter reads remains on servers within Defendant's control, and it does not commercially share or sell the meter reads or customer account data with SAP or any other party.
Defendant's brief in support of its motion for summary judgment points out that the law describes two different types of claims that exist for invasion of privacy, i.e. actionable and non-actionable. It points out that an actionable invasion of privacy arises only when a defendant's conduct is unreasonable and seriously interferes with a privacy interest. The reasonableness of the defendant's acts is determined by balancing the interests of the plaintiff in protecting his privacy from serious invasions with the defendant's interest in pursuing his course of conduct. A defendant's conduct is deemed reasonable and non-actionable when it is properly authorized or justified by circumstances, even if there is a slight invasion of the plaintiff's privacy.
In opposition to the motion for summary judgment, Plaintiff filed his own affidavit and that of Stephen A. DeLurigio, Sr., a professor emeritus and retired professor of operations management from the University of Missouri with an MBA and Ph.D in Management Science/Operations Research. Dr. DeLurigio's affidavit states he was asked to offer an opinion on whether the ERT device captures and transmits data from which detailed information about activities within the home is revealed, the commercial uses of that data and the consequential customer privacy concerns implicated in the over-collection of data. Scientific charts, data and analysis (27 pages) are attached to his affidavit. He concludes his affidavit with statements that the ERT is capable of collecting other data (as proposed by Plaintiff) and that companies are now acquiring information concerning home usage of gas and appliances which might be worth more than the commodities they sell. It was his opinion that the invasions of privacy identified by Plaintiff "are not imaginary or unlikely."
The trial court held a hearing on Defendant's motion for summary judgment on May 1, 2018. Before the hearing began, *1154 Plaintiff's attorney asked the trial court to consider her objections to the affidavit testimony of Defendant's witness, Engelken. She told the trial court that they objected to what appears to be expert witness testimony from a lay witness and that Engelken appeared to be making statements about matters that would require a higher level of training, knowledge or expertise than his affidavit would suggest he has. She complained that he was not trying to explain something of which he has personal knowledge, and he does not appear to have any personal knowledge of these meters or the training to give an opinion on them. She asked the trial court to strike large portions of the affidavit, specifically paragraphs 7 through 21.
In response, Defendant's attorney stated that Engelken had been employed as manager of meter reading for Defendant for 38 years. He argued that Engelken's affidavit sets forth his personal knowledge of the things to which he attested. He knows how the meters and ERT work, how they are installed and what the meter readers do every month. He argued that it was not expert testimony, but, instead, factual testimony about how the meter readers acquire the information and which information they receive from the meter for the purpose of processing bills. The trial court overruled Plaintiff's objection and allowed the affidavit to "stand for what it is" and stated that it would "receive it for however it's helpful here."
The hearing continued and the trial court attempted to ascertain exactly how Plaintiff thought his privacy was being invaded by the meter. Plaintiff contested that the device placed on his home was not even a "meter" and stated that he believed the device was an electronic reporting device, similar to an encoder receiver transmission, that does not measure gas the same way the dial meter did. He objected to the data being collected being accessible to the public and argued that Defendant was collecting much more data than it needed for billing purposes and that it was amassing a gigantic database of information about its customers. Plaintiff believed there is a market for this information and claimed that Dr. DeLurgio's affidavit defines the market for the court. His argument ended with a statement that there is a genuine issue of material fact as to how the ERT works and that he has proof from people with engineering backgrounds that they do not work in the fashion described by Engelken.
The trial court granted Defendant's motion for summary judgment and stated that it could not find any genuine issue of material fact since the ability to violate someone's privacy is different than an actual violation of privacy. A judgment was signed dismissing Plaintiff's case against Defendant. Plaintiff appeals that judgment.
DISCUSSION
Plaintiff argues that the trial court committed legal error by denying his objection to the lay witness opinions contained in the affidavit of Defendant's employee, Engelken, and by not excluding his lay witness opinions from the summary judgment record. He asserts that Engleken's affidavit did not indicate his own knowledge of how the ERT worked, how it measures gas usage, how it functions, the settings to which it is or could be programmed, or any of the capabilities of the device. He argues that his own affidavit and that of Dr. DeLurgio establish that the ERT unreasonably invades the customer's right to in-home privacy and that Defendant could find a market for the information it collects.[1]
*1155 Plaintiff further argues that his objection to Engelken's affidavit should have been granted because Defendant failed to carry its initial burden of production.
La. C.C.P. article 967(A) provides, in pertinent part:
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. The supporting and opposing affidavits of experts may set forth such experts' opinions on the facts as would be admissible in evidence under Louisiana Code of Evidence Article 702, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.
La. C.E. art. 701 concerns opinion testimony by lay witnesses and states that if the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue.
As a general rule, a lay witness is permitted to draw reasonable inferences from his or her personal observations. If the testimony constitutes a natural inference from what was observed, no prohibition against it as the opinion of a non-expert exists as long as the lay witness states the observed facts as well. State v. Davis , 44,656 (La. App. 2 Cir. 11/18/09), 26 So.3d 802, writ denied , 09-2768 (La. 6/25/10), 38 So.3d 355.
When an objection to an affidavit in support of or in opposition to a motion for summary judgment is made in accordance with La. C.C.P. art. 966(D)(2), the only issue to be determined is whether that affidavit is in compliance with La. C.C.P. art. 967. Mariakis v. N. Oaks Health Sys. , 18-0165 (La. App. 1 Cir. 9/21/18), 258 So.3d 88.
The trial court is vested with much discretion in determining whether to allow lay witness testimony as to an opinion or inference, in accordance with La. C.E. art. 701, including the admissibility of evidence. Its decision to admit or exclude evidence will not be reversed on appeal in the absence of a clear abuse of discretion. FIE, LLC v. New Jax Condo Ass'n, Inc. , 16-0843 (La. App. 4 Cir. 2/21/18), 241 So.3d 372, writ denied , 18-449 (La. 5/25/18), 243 So.3d 544, and writ denied , 18-446 (La. 5/25/18), 243 So.3d 545.
In the case at bar, the trial court determined that Engelken's affidavit met the requirements for admission into evidence as required by La. C.C.P. art. 966(D)(2) and agreed to "allow the affidavit to stand for what it is." We find no abuse of discretion in its ruling. This assignment of error is without merit.
Plaintiff's remaining three assignments of error concern specifically whether or not summary judgment was appropriate in this case. He first argues that the trial court erred by shifting the burden to the nonmoving party to establish a disputed material fact prior to the moving party carrying its initial burden of proof on the invasion of privacy issue. He contends that had the trial court correctly disregarded those portions of Engelken's affidavit upon which Defendant relies to show no genuine issues of material fact, it would have been clear that summary judgment is not appropriate in this case, and the burden would never have shifted.
Plaintiff next argues that since he filed his affidavit and that of Dr. DeLurgio, the *1156 trial court was forced to weigh evidence and the credibility of witnesses to reach a determination that no genuine issues of fact exist, and that is not a function the court should have to perform when the issue is summary judgment.
Last, Plaintiff argues that genuine issues of material fact remain and were in dispute since there was a huge discrepancy between Defendant's evidence of how the ERT works and how he and Dr. DeLurgio claim it works. He contends that Dr. DeLurgio's testimony established there was a market for the data collected and that Defendant had a strong commercial motive to over-collect data and bank it in anticipation of future use. He argues that there is a genuine issue of material fact concerning whether Defendant is actually collecting data, subject to sale, or at least interception by the public, that causes an invasion of his privacy. For these reasons, he asserts that the trial court erred in granting the motion for summary judgment and dismissing his case.
Defendant argues that Plaintiff's petition only asserts a cause of action for invasion of privacy and that he seeks monetary damages for that invasion and consequent loss of utility services. It points out that Plaintiff now claims he filed suit seeking damages arising from invasion of privacy, breach of contract and violations of its statutory duties to provide him with a meter he could view and from which he could calculate usage at any time and to bill him in accordance with usage measured from the viewable meter. It also argues that Plaintiff did not raise the "false meter" argument until the opposition to the motion for summary judgment. He did not plead breach of contract or violations of its statutory duties and did not seek damages for such breach or violation. To argue that he did is an improper attempt to expand the scope of his pleadings, to which it specifically objected.
Defendant further argues that Plaintiff has no actionable claim for invasion of privacy. It was reasonable for it to install the ERT as part of its efforts to reduce costs and provide quality service to its customers. Plaintiff only offered his theories and speculation as to what data it collects from the ERT-enabled meter and the use of that data. At the end, the trial court recognized that the mere potential to violate privacy is different than an actual violation of privacy.
Defendant asserts that the trial court did not err by shifting the burden to Plaintiff to establish a disputed material fact because it had presented proof, in the form of the affidavits of several people, showing that Plaintiff's alleged cause of action for invasion of privacy lacked merit. It argues that when the burden shifted to Plaintiff to show that a genuine issue of material fact remained, the trial court examined what Plaintiff had produced and simply concluded that while the potential might exist for it to gather the information that Plaintiff claimed was being stored and potentially sold, the trial court could not find any proof that it had actually occurred. Thus, it found that the ability to violate privacy "is different than a violation" of privacy.
Defendant contends that the trial court did not engage in the weighing of evidence, assessment of credibility or fact-finding assessments in order to reach that conclusion; rather, Plaintiff simply could not show the existence of a genuine issue of material fact. For these reasons, it asserts that the trial court properly granted the motion for summary judgment and dismissed Plaintiff's suit.
The procedure for motions for summary judgment is found in La. C.C.P. art. 966, which states that after an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum and supporting documents *1157 show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).
La. C.C.P. art. 966 (D)(1) states:
The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.
Summary judgments are subject to a de novo review using the same criteria as the trial court to determine whether summary judgment is appropriate. Arceneaux v. Amstar Corp. , 15-0588 (La. 9/7/16), 200 So.3d 277 ; Zeno v. Great S. Coaches of Arkansas, Inc. , 51,370 (La. App. 2 Cir. 5/17/17), 223 So.3d 599.
A fact is material if its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery, i.e., material facts are those which potentially insure or preclude recovery, affect a litigant's ultimate success or determine the outcome of the legal dispute. Chreene v. Prince , 52,351 (La. App. 2 Cir. 9/26/18), 256 So.3d 501, citing Wells v. Town of Delhi , 51,222 (La. App. 2 Cir. 4/5/17), 216 So.3d 1095, writ denied , 17-0753 (La. 9/22/17), 227 So.3d 821.
Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Solomon v. Taylor Brokerage Servs., Inc. , 33,832 (La. App. 2 Cir. 10/4/00), 768 So.2d 799.
La. Const. art. I, § 5, states, in pertinent part, that every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.
In Tate v. Woman's Hosp. Found. , 10-0425 (La. 1/19/11), 56 So.3d 194, the Louisiana Supreme Court stated:
The tort of invasion of privacy is directed at redressing the damage which an individual suffers when legally recognized elements of his right to privacy have been violated. Gorman v. Swaggart , 524 So.2d 915, 920 (La. App. 4 Cir.1988). The right to privacy is defined in Louisiana as "the right to be let alone." Pack v. Wise , 155 So.2d 909, 913 (La. App. 3rd Cir.1963), writ denied , 245 La. 84, 157 So.2d 231 (1963). A tort of invasion of privacy can occur in four ways: (1) by appropriating an individual's name or likeness; (2) by unreasonably intruding on physical solitude or seclusion; (3) by giving publicity which unreasonably places a person in a false light before the public; and (4) by unreasonable public disclosure of embarrassing private facts. Jaubert v. Crowley Post-Signal, Inc. , 375 So.2d 1386 (La. 1979).
When an individual has a right of privacy, other members of society have a corresponding duty not to violate that right. Jaubert v. Crowley Post-Signal, Inc. , supra. Even where a right to privacy is found to exist, Louisiana courts have distinguished between invasions of that *1158 right which are actionable and those which are not. Id. An actionable invasion of privacy occurs only when the defendant's conduct is unreasonable and seriously interferes with the plaintiff's privacy interest. Id. The reasonableness of the defendant's conduct is determined by balancing the conflicting interests at stake, the plaintiff's interest in protecting his privacy from serious invasions, and the defendant's interest in pursuing his course of conduct. Id.
When one member of society infringes upon another's right to be let alone, it constitutes a breach of duty, or fault, and may be actionable under La. C.C. art. 2315. Zellinger v. Amalgamated Clothing , 28,127 (La. App. 2 Cir. 4/3/96), 683 So.2d 726 (on reh'g ).
Naperville Smart Meter Awareness v. City of Naperville , 900 F.3d 521 (7th Cir. 2018), is instructive in the case at bar. In that case, a non-profit organization that opposed a city's replacement of analog electricity meters with digital "smart meters" brought an action against the city, alleging that its collection of energy-consumption data from smart meters constituted an unreasonable search under the Fourth Amendment of the U.S. Constitution and an unreasonable search and invasion of privacy under the Illinois Constitution. The plaintiff's first two complaints were dismissed without prejudice, but it was denied the right to file a third amended complaint. On appeal, the court found that the collection of smart meter data at 15-minute intervals was a "search" under the Fourth Amendment, citing , Kyllo v. United States , 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001), which stated that "Where ... the Government uses a device that is not in general public use, to explore details of the home that would previously have been unknowable without physical intrusion, the surveillance is a 'search.' " This case involves a public utility, not a private company, but the appellate court, while admitting that the collection of data could be deemed a search, assessed whether the collection of the data was reasonable. It did so by applying the balancing test and concluding that the collection of smart meter data was a reasonable search that did not violate the Fourth Amendment. For that reason, the plaintiff's request to file a third amended complaint was denied.
In St. Julien v. S. Cent. Bell Tel. Co. , 433 So.2d 847 (La. App. 3 Cir. 1983), the plaintiffs filed suit against the telephone company alleging that it violated their right to privacy when its employee, assisted by an apartment complex employee, entered their apartment without consent or authority and wrongfully seized telephone units. The appellate court found there had been an intrusion of privacy by the telephone company. It also found that while the Louisiana Public Service Commission had broad power to adopt reasonable and just rules, regulations and orders affecting the service and operation of telephone utilities, it did not believe the mere filing of a tariff by a utility could justify actions otherwise prohibited by law. It found the tariffs were subordinate to constitutional provisions and stated that, "[a]ssuming, arguendo, that the tariffs were controlling, there is nothing in the language of such regulations which grants the right to enter a subscriber's premises in his absence and remove equipment without consent." It rendered judgment in favor of the plaintiffs in the nominal amount of $ 1,000.
In the case sub judice , Defendant is a gas utility company whose purpose is to provide gas service to the citizens. It has the authority to enter Plaintiff's property and place the ERT on the meter and also the right to condition service to Plaintiff's home based on the ERT's presence *1159 affixed to the meter. The cost of reading the meter was reduced substantially by the placement of the ERT on customers' meters, falling from $ 1 per meter to $ 0.10 per meter. When Plaintiff vehemently objected to the ERT on his meter and consented to it being removed and gas service to his home being terminated, the ERT was removed at his request.
Since Defendant did not bear the burden of proof at trial on the issue that was before the court on the motion for summary judgment, its burden on the motion did not require it to negate all essential elements of Plaintiff's claim, action or defense, but, rather, had to point out to the court the absence of factual support for one or more elements essential to Plaintiff's claim, action or defense. Therefore, once Defendant showed that Plaintiff's claim was not an actionable one under the law because its alleged invasion of privacy was based on a reasonable course of conduct, and the invasion of privacy was minimal, the burden shifted to Plaintiff to produce factual support sufficient to establish the existence of a genuine issue of material fact or that Defendant was not entitled to judgment as a matter of law.
Plaintiff's affidavit and that of his expert, Dr. DeLurigio, along with data related to scientific investigations, descriptions of how the ERT works, the potential for the sale of the collected data to third parties and Dr. DeLurigio's opinion that Plaintiff's fears could be validated, failed to carry the burden to show that his claim was actionable. Defendant's intrusion was not unreasonable when compared to Plaintiff's interest in protecting his privacy. As the trial court implied, the potential for an abusive invasion of privacy might be present, but the evidence produced by Plaintiff did not establish the existence of a genuine issue of material fact or that Defendant was not entitled to judgment as a matter of law.
For the foregoing reasons, these assignments of error are without merit.
CONCLUSION
The judgment of the trial court granting summary judgment in favor of Defendant CenterPoint Energy Resources Corp. and against Plaintiff Kelly Farrar is hereby affirmed. Costs of the appeal are assessed to Plaintiff Kelly Farrar.
AFFIRMED.
APPLICATION FOR REHEARING
Felicia Toney Williams, Daniel Milton Moore III, Frances Jones Pitman - Writing, Jeff Cox, and James Mark Stephens.
Rehearing denied.

However, Plaintiff was unable to state that he had proof that Defendant had sold the collected data or provided it to third parties.